```
  1                       UNITED STATES DISTRICT COURT
                          NORTHERN DISTRICT OF OHIO
  2                            EASTERN DIVISION


  3
        UNITED STATES OF AMERICA,       ) Case No. 5:20-cr-114-1
  4                                     ) Cleveland, Ohio
                    Plaintiff,          )
  5                                     )
             vs.                        ) Tuesday, May 24, 2022
  6                                     )
        LARRIEN BROWN-AUSTIN,           )
  7                                     )
                    Defendant.          )
  8


  9
                       TRANSCRIPT OF SENTENCING PROCEEDINGS
 10                   BEFORE THE HONORABLE PAMELA A. BARKER
                          UNITED STATES DISTRICT JUDGE
 11


 12
        APPEARANCES:
 13
        For the Government:        Carol M. Skutnik
 14                                Assistant United States Attorney


 15
        For the Defendant:         Mark R. DeVan, Esquire
 16


 17
        For Probation:             Jennifer Deserto
 18


 19


 20
        Official Court Reporter:   Gregory S. Mizanin, RDR, CRR
 21                                United States District Court
                                   801 West Superior Avenue
 22                                Court Reporters 7-189
                                   Cleveland, Ohio 44113
 23                                216.357.7036
                                   gregory_mizanin@ohnd.uscourts.gov
 24


 25        Proceedings recorded by mechanical stenography, transcript
                  produced with computer-aided transcription.
```

1                        TUESDAY, MAY 24, 2022

2                              - - -

3              (Proceedings commenced at 9:10 a.m.)

4                              - - -

5              THE COURT:  We are on the record and here for

6    sentencing in the matter captioned the United States of

7    America versus Larrien Brown-Austin.  This is case number

8    5:20-cr-114.  Present in the courtroom are the defendant,

9    Larrien Brown-Austin; his counsel, Mr. Mark DeVan; Assistant

10   United States Attorney Carol Skutnik; and our probation

11   officer, Jennifer Deserto.

12        Is there anyone that's appearing or participating by

13   telephone?

14             MS. SKUTNIK:  If I may, Your Honor, Special

15   Agent Stephanie Kochera from the FBI is participating

16   online.  I believe Victim Number 1 is online along with her

17   therapist, Tony McKinley.  And then there is also FBI Victim

18   Assistant Deborah Hughes-Butts.

19             THE COURT:  Thank you.

20        How about Victim 2?

21             MS. SKUTNIK:  Not participating today.

22             THE COURT:  All right.  But she was notified

23   of the date and time of the hearing, correct?

24             MS. SKUTNIK:  She was, Your Honor.

25             THE COURT:  All right.  Thank you very much.

1          MS. SKUTNIK:  And I'm not certain if Allison

2     Kretz from my office, victim assistant, is also

3     communicating or contacting us by video, but I better put

4     that on the record too just in case I miss her.

5               THE COURT:  Thank you.

6          And does Victim Number 1 intend to participate in the

7     hearing by speaking today?

8               MS. SKUTNIK:  She does not, Your Honor.  She

9     does not want to speak at all.

10              THE COURT:  Thank you very much.

11         I have received and reviewed the presentence

12    investigation report, the defendant's sentencing memorandum,

13    the government's sentencing memorandum, a written statement

14    by victim SD, who, through a licensed professional counselor

15    and community director at a residential program for women

16    who had been trafficked, requests criminal restitution in

17    the amount of $64,504 to $71,056 for future sessions of eye

18    movement desensitization and reprocessing, or EMDR, therapy

19    and treatment for her substance abuse disorder to include

20    medical-assisted treatment.

21         I have also received and read letters of

22    recommendation from the defendant's family members.

23         Do the parties have any other documents or letters for

24    the Court?

25              AUSA Skutnik?

1          MS. SKUTNIK:  Nothing further, Your Honor.

2          THE COURT:  Mr. DeVan?

3          MR. DEVAN:  Nothing further, Judge.

4          THE COURT:  Thank you.

5       Mr. DeVan, have you and your client read and discussed

6   the presentence investigation report?

7          MR. DEVAN:  We have, Your Honor.

8          THE COURT:  Thank you.

9       And am I correct, Mr. DeVan, in stating that you filed

10   two objections to the report?

11          MR. DEVAN:  That is correct, Your Honor.

12          THE COURT:  And as I read those, objection

13   number 1, as outlined by the presentence report writer, sets

14   forth your representations to the PSR that were provided to

15   the probation officer dated April 13th, that, "Other than

16   factual representations under the offense conduct portion of

17   the PSR, paragraphs 9 through 35, 40 to 41, and defense

18   behavior not part of relevant conduct, paragraph 66 to 76,

19   the defendant has no objections to the guideline

20   calculations or application of the Criminal Rule 11(c)(1)(C)

21   plea agreement."  Is that correct?

22          MR. DEVAN:  That is correct, Judge.

23          THE COURT:  And as I understand it from your

24   sentencing memorandum, your client takes issue with respect

25   to uncharged conduct or offense behavior not part of

1    relevant conduct, specifically defendant's behavior towards

2    three additional women who provided statements alleging harm

3    like that inflicted upon Victims 1 and 2 as outlined in

4    paragraph 66 to 76 of the PSR.

5         And as I understand it from reading your sentencing

6    memorandum, the defendant specifically denies that he was

7    involved in physically restraining Individual Number 1 or

8    injecting drugs into her or threatening to "dig a grave for

9    her," and denies forcefully restraining Individual Number 2

10   or physically assaulting Victim Number 3.

11        Do I have that correct?

12             MR. DEVAN:  That is correct, Judge.

13             THE COURT:  Thank you.

14        And did you review the response by Miss Deserto to

15   your objection?

16             MR. DEVAN:  I did.

17             THE COURT:  And I do note that Miss Deserto

18   advised that the defendant did not provide additional

19   information for this portion of the report and did not

20   provide any information or evidence of his own to contradict

21   or disprove the conduct described in paragraphs 9 through

22   35, 40 and 41, and 66 through 76.

23        Is that correct, Mr. DeVan?

24             MR. DEVAN:  That's correct.

25             THE COURT:  Does he plan to do so now?

1              MR. DEVAN:  No.

2              THE COURT:  All right.  Are you expecting an

3    evidentiary hearing with regard to objection number 1?

4              MR. DEVAN:  No.

5              THE COURT:  Thank you.

6         Would you like to elaborate on your objection

7    number 1?

8              MR. DEVAN:  No, Your Honor.  Except to say

9    that if -- that my client simply denies that he engaged in

10   that sort of conduct as charged by these individuals who

11   were not named in the indictment.

12             THE COURT:  Thank you.

13        Probation Officer Deserto, any response, reply to

14   Mr. DeVan?

15             MR. DESERTO:  I have nothing to add besides

16   what's in the addendum, Your Honor.

17             THE COURT:  And, AUSA Skutnik, any response by

18   the government?

19             MS. SKUTNIK:  Your Honor, I would simply add,

20   which is very similar to the response of Miss Deserto, is

21   that one of the 3553(a) factors is that the Court consider

22   the history and characteristics of the defendant.  Much like

23   the defendant in this case submitted a series of letters

24   talking about how wonderful he is, we believe that this is

25   appropriate information the Court may consider or may elect

1    to not consider, depending on what value the Court places on

2    it, but certainly would submit that it is relevant

3    information to consider his history and characteristics.

4         And we did address in our sentencing memorandum some

5    of these statements, and what we also feel the significance

6    of these statements are as it relates to the 11(c)(1)(C)

7    plea agreement in this case.

8         But we do believe it should be within the universe of

9    information the Court considers.  Thank you.

10                   THE COURT:  All right.  Thank you.

11        Certainly there's an 11(c)(1)(C) plea agreement,

12   correct?

13        Both parties are urging this court to accept that plea

14   agreement, and impose a sentence consistent therewith, which

15   is the 180 months, is that correct, Mr. DeVan?

16                   MR. DEVAN:  That's correct, Judge.

17                   THE COURT:  Is that correct, AUSA Skutnik?

18                   MS. SKUTNIK:  It is, Your Honor.

19                   THE COURT:  Certainly I agree with

20   Miss Skutnik to the extent that is information similar to

21   what the defense provided and it just sort of can be

22   considered, but in the end is of no moment if I accept the

23   plea agreement.

24        Would you agree with that, Mr. DeVan?

25                   MR. DEVAN:  I would agree, Judge.

1          (Pause in the proceedings.)

2              MS. SKUTNIK:  I have a text message from Agent

3      Kochera saying, "I called in on phone, I still hear

4      nothing."

5              COURTROOM DEPUTY:  I apologize.

6              MS. SKUTNIK:  Your Honor, I know that

7      typically I would never have my phone next to me on the

8      table, but I'm only using it to communicate with my case

9      agent.  Would the Court permit that for today's hearing?

10             THE COURT:  Yes.

11             MS. SKUTNIK:  Thank you.

12             THE COURT:  We'll take a ten-minute break.

13                 (Recess taken at 9:31 a.m.)

14                 (Court resumes at 9:37 a.m.)

15             THE COURT:  If I remember correctly, AUSA

16     Skutnik, were you meaning to say something in response to

17     Mr. DeVan?

18             MS. SKUTNIK:  I was agreeing that in the end

19     if the Court accepts the plea agreement, that the

20     information from the other statements would -- as the Court

21     said, of no moment.

22             THE COURT:  All right.  Thank you very much.

23         Now, Mr. DeVan, I do note that your objection number 2

24     is an objection to the restitution request set forth in

25     paragraph 136 of the PSR that was revised to include the

1    request for restitution of victim SD for between $64,504 and

2    $71,056, is that correct?

3                    MR. DEVAN:  That is correct, Your Honor.

4         And, just to clarify, the original restitution request

5    we do not object to, which was the -- I think it was

6    about --

7                    THE COURT:  $3,770 for Victims 1 and 2 or

8    1,885 for each of these two victims jointly and severally

9    with co-defendants Larry Brown-Austin and Shannon Marzano,

10   correct?

11                   MR. DEVAN:  That part we have no objection to.

12                   THE COURT:  All right.  Are you expecting an

13   evidentiary hearing on the restitution issue or the amount

14   that you object to based upon the report from the counselor?

15                   MR. DEVAN:  No, Your Honor.  I think it's

16   purely a legal question for Your Honor to consider in this

17   matter.

18                   THE COURT:  All right.  Thank you.

19        And, AUSA Skutnik, any comment at this time on that?

20   Are you expecting an evidentiary hearing since you have the

21   burden of proof associated with that restitution?

22                   MS. SKUTNIK:  We are not, Your Honor.

23        And I would add just for the record that although I

24   filed my memorandum under seal, and the restitution letter

25   from the therapist was heavily redacted, I did, under the

1    protective order in this case, provide an unredacted copy of

2    the letter to counsel so that he would have more complete

3    information as it related to the author.

4                      THE COURT:  All right.  Thank you very much.

5          We will address that issue shortly, but I'd like to

6    get through the plea, et cetera, before we go into that

7    issue of restitution because that will really be the focus

8    of this hearing, is evaluating that particular issue

9    associated with the letter from the counselor as I see it.

10   All right?

11         Now, am I correct, AUSA Skutnik, that you did not file

12   any objections to the PSR and, therefore, you're not

13   expecting an evidentiary hearing on any of that except -- I

14   mean, are you expecting an evidentiary hearing?

15                     MS. SKUTNIK:  No, Your Honor.  We did not file

16   any objections.  We accept the final report as written.

17                     THE COURT:  Thank you.

18         Now, defendant did plead guilty to Count 1 of the

19   indictment, specifically conspiracy to commit sex

20   trafficking by force, threats of force, fraud, and coercion,

21   in violation of Title 18, United States Code,

22   Sections 1591(a)(1), 1591(a)(2), and 1594(c).

23         According to the presentence investigation report and

24   consistent with the plea agreement, the base offense level

25   for the offense is 34.

1          Pursuant to United States Sentencing Guideline

2    Section 2G1.1(a)(1), there is a two-level upward

3    multiple-count adjustment for two victims, pursuant to

4    United States Sentencing Guideline Sections 2G1.1 and

5    3D1.4(a).  And there is a Chapter 4 enhancement because the

6    defendant is a repeat and dangerous sex offender against

7    minors, and the offense level then is the greatest of

8    Sections 4B1.5(a)(1)(A) or (B).  And in this case the

9    offense level determined under 4B1.5(a)(1)(B)(i) is 37, or

10   the greatest and applicable offense level, because the

11   statutory maximum term of imprisonment is life.  Thus, the

12   total offense level before acceptance of responsibility is

13   37.

14          Now, to the issue of acceptance of responsibility, at

15   paragraph 44 of the presentence investigation report, the

16   defendant did provide a written statement accepting

17   responsibility for his offense conduct.

18          AUSA Skutnik, does the government have a motion to

19   reduce the offense level by three levels pursuant to United

20   States Sentencing Guideline Sections 3E1.1(a) and (b)?

21               MS. SKUTNIK:  We would make that motion now,

22   Your Honor.

23               THE COURT:  Thank you.

24          The Court grants the government's motion and reduces

25   the offense level by three levels, pursuant to United States

1    Sentencing Guidelines 3E1.1(a) and (b).  Thus, the total

2    offense level is 33.  The defendant's criminal history

3    category is VI, which produces a guideline sentence range as

4    follows:  262 to 327 months of imprisonment; a term of

5    supervised release following imprisonment of five years to

6    life; and a fine range of 35,000 to $250,000.  There is a

7    $100 mandatory special assessment.  And pursuant to the

8    Justice for Victims of Trafficking Act of 2015, the Court

9    shall assess an amount of $5,000 per count on any

10   nonindigent person.

11        And pursuant to Title 18, United States Code,

12   Section 3663(a) and United States Sentencing Guideline,

13   Section 5E1.1, restitution shall be ordered.

14        Also pursuant to Title 18, United States Code,

15   Sections 3563 and 3583, the defendant is required to

16   register under the Sex Offender Registration and

17   Notification Act and must comply with the requirements of

18   that act as directed by the probation officer.

19        Are there any objections, AUSA Skutnik?

20            MS. SKUTNIK:  No, Your Honor.

21            THE COURT:  Any objections, Mr. DeVan?

22            MR. DEVAN:  No, Your Honor.

23            THE COURT:  Thank you.

24        Now, in the plea agreement, the 11(c)(1)(C) plea

25   agreement, the parties agreed that the Court should impose a

1   term of imprisonment of 180 months.  Am I correct in saying

2   that the parties, meaning both United States Attorney's

3   Office on behalf of the government and Mr. DeVan on behalf

4   of the defendant, understood that the guidelines range would

5   be significantly higher, but nonetheless agreed that the

6   Court should impose a sentence or term of 180 months of

7   imprisonment, AUSA Skutnik?

8               MS. SKUTNIK:  On behalf of the government,

9   Your Honor, yes.  And that would be reflected in the

10  guideline calculation, which is included in the plea

11  agreement which is consistent with that found in the

12  presentence report.

13              THE COURT:  Mr. DeVan?

14              MR. DEVAN:  Yes, we're in agreement, Your

15  Honor, and urge the Court to accept the plea agreement of

16  180 months.

17              THE COURT:  All right.  Thank you.

18       Understanding that I have read your sentencing

19  memoranda where you explain your agreement for a sentence of

20  180 months imprisonment, please explain for the record and

21  on the record in open court why and how -- given the nature

22  and circumstances of the offense, to include the severe harm

23  to the victims; the defendant's personal history and

24  characteristics, to include his criminal background and

25  history, which is extensive; the need for the sentence to

1    reflect the seriousness of the crime, and it is a horrendous

2    crime; promote respect for the law, provide just punishment

3    for the offense to Mr. Brown-Austin, and deter criminal

4    conduct -- the sentence of 180 months is appropriate.

5          AUSA Skutnik, I'll hear from you first.

6                MS. SKUTNIK:  Thank you, Your Honor.

7          And, Your Honor, may it please the Court:

8          The 3553(a) factors in almost every way seem to bode

9    against an agreement of the mandatory minimum term of

10   incarceration of 15 years the defendant would have received

11   on Counts 2 and 3, the substantive counts.  There's no

12   question about that.

13         It's hard for the government to talk about Larrien

14   Brown-Austin in this case without absolute disdain for his

15   offense conduct and his criminal history.  There's no

16   question about that.

17         And so we certainly understand why the Court would

18   have grave concern over this agreement.  And we did address

19   this in part during a previous sentencing for the

20   defendant's father and also a co-defendant, Ms. Marzano.

21         The number one driving factor, which the government

22   spends a great deal of time talking about in its sealed

23   sentencing memorandum, is the health and wellbeing of these

24   two young adult women.  These women have suffered tremendous

25   trauma, coupled by the fact that they are addicted to

1    substances such as heroin and methamphetamine.  I have

2    discussed this case at tremendous length with Victim

3    Number 1, SD, as well as discussed the case with Victim

4    Number 2, ML.  And there are two things that stick out that

5    weigh heavily on this plea agreement.

6         First of all, this case has been pending for a couple

7    of years.  And in that period of time, while that may be a

8    very normal course of action in some other types of cases,

9    particularly given the pandemic and the incredible

10   restrictions that were placed on the courts during the two

11   years that we have been under the pandemic, it is not a

12   normal sense of time for victims of human trafficking, or

13   similarly, child victims.  And the statutes reflect that.

14        And in particular, a case like this where the

15   defendant has pled guilty to force, fraud, or coercion as

16   the means to commit sex trafficking.  And one of the ways

17   that the defendant controlled these two particular women was

18   through the use or withholding of drugs.  He kept them high

19   all the time so that they would be compliant and that they

20   would repeatedly perform sexual acts that would benefit him

21   financially, and he would take that money.  He was also

22   physically abusive during that period of time.  And those

23   details are described in the PSR and the government's

24   memorandum as well.

25        When this case was charged, one victim was in -- had

1       just gotten out of the hospital and was trying to get clean.

2       The other victim followed suit.  But in the period of time

3       that this case has been pending and during the negotiations

4       between the government and defense counsel, there have been

5       several times when the victims have been either AWOL or have

6       relapsed and were extremely sick and, to be very honest,

7       thought dead by the government because we could not locate

8       them.  And they had relapsed, and their disease is quite

9       grave.  And as this court is aware, sitting on this bench,

10      the prospects of one recovering from such horrific drugs

11      such as heroin and methamphetamine, this has been -- the

12      process, as they say, how the sausage got made, this has

13      been very important in the government's consideration of

14      negotiating pleas in this case.

15          So I don't mean to be long-winded, Judge, but I think

16      it bears saying in justifying this plea agreement that I

17      have swallowed because I think it's the right thing to do.

18          The second thing that I think is important in this

19      case is, unlike most of the other cases certainly that are

20      prosecuted by the federal government, the types of evidence

21      that we would often use to corroborate or prop up these two

22      women were not recovered.  And I mention in my memorandum

23      that this actually started as a parole search.  So it was

24      not an evidence-gathering mission.  It was a mission to go

25      in to follow up on complaints of alleged trafficking.  The

1     defendant was arrested with a firearm, there were drugs in

2     the house, and Victim Number 1, SD, was recovered.

3          It was days later when the Canton Police Department

4     obtained a search warrant, but by the time that they got to

5     the house, the house had been set on fire.  And the Court is

6     aware the government investigated that matter, there was no

7     question, we had two opinions that indicated that the fire

8     was arson; however, we could not establish who set the fire.

9     But mysteriously the house is set on fire and most of the

10    evidence is destroyed.

11         Now, a year or so later, the FBI did enter the home

12    that was still boarded up in an attempt to acquire some

13    materials.  But I say all of this to say, unlike what we

14    would often see in a case of this seriousness, for purposes

15    of trial preparation, we did not have logs, we did not have

16    tallies for appointments, other types of corroborating

17    evidence that you might find.  We did find some evidence on

18    a cell phone that was seized in the parole search.

19         So I think that's like the second important factor

20    here in consideration of weighing the government's evidence

21    in this case.

22         Now, that's not to say that we don't think that we

23    have a case against Larrien Brown-Austin, but we know how

24    these things can affect ultimately a presentation to a jury.

25         I would sum up by saying, Your Honor, that SD's

1    health -- mental health is fragile.  We had arranged for her

2    to come in person -- we had acquired funds for her to

3    travel, to come in person to the sentencing, and ultimately

4    she ended up saying, "I just can't -- I can't do it.  I feel

5    that that would be a significant setback for me."

6         Her sobriety and her mental health are fragile, and

7    she has worked so hard.  And I've witnessed the work that

8    she has done and the transformation that she has made, but

9    she is on a long journey.  And she is in agreement with the

10   resolution that does not require her to sit on that stand in

11   front of this defendant to tell her truth and to talk about

12   what happened to her while she was in that house.

13        Similarly, in meeting and speaking with ML, she

14   expressed similar concerns about coming to court to testify.

15   Sadly, her words were, "I really just want to put this

16   behind me," which as we know -- as I know in my experience

17   with these kind of cases is perhaps not the healthiest thing

18   to do.  I don't think that's going to happen.  I think that

19   she doesn't want to think about it.  Luckily she's currently

20   sober, but, again, adamant that she does not believe that

21   she could withstand emotionally a trial on the matter.

22        So, again, I apologize for being long-winded, but I

23   think that although all of the rest of the 3553(a) factors

24   are compelling to reject this plea agreement, when you lay

25   those on the balance scale and you, in my opinion, consider

1    that we don't want to do more harm to these women in order

2    to force this matter to trial or to go for a greater

3    sentence, I don't want to do more harm to them.  I want to

4    make sure that I have a bird in the hand.  I want to make

5    sure that this defendant does not get released, does not go

6    back to repeat this behavior, and it would protect the

7    public even if it is for 15 years.

8         So those are the compelling reasons why the government

9    believes that, although it is a significant variance, that

10   there are reasons to justify the Court accepting this

11   sentence.

12        Thank you.

13             THE COURT:  And you'll confirm then that both

14   victims were given the opportunity to weigh in on this

15   11(c)(1)(C) agreement with the agreed term of 180 months and

16   were okay with that?

17             MS. SKUTNIK:  We have complied with our victim

18   notification, but, Your Honor, we've gone above and beyond.

19   They have -- I have spoken personally to the victims, they

20   have spoken with victim advocates from both my office as

21   well as the FBI, and in the end it is their reasoned

22   decision that this is a good resolution.

23             THE COURT:  All right.  Thank you.

24        Mr. DeVan.

25             MR. DEVAN:  Your Honor, I would adopt what the

1    government said in terms of reason to accept this plea

2    agreement.

3         As the Court is aware, the parties are most conversant

4    with the facts of a case, they are most aware of the

5    strengths and weaknesses of cases.  That goes for the

6    defense in this case also in terms of negotiating a result

7    which we felt would satisfy the standards of 3553.

8         I know the Court's concerned for the future about

9    Mr. Brown, but for the first time he will be in the federal

10   system, which provides mental health treatment as well as

11   drug addiction treatment like no other system.  He has been

12   in and out of the state system a few times; and

13   unfortunately, I hate to be too critical, but it does not

14   provide the kind of attention and treatment that he has

15   needed throughout his life.

16        I would ask the Court to recognize first that what has

17   happened -- and we put this in our sentencing memo -- as so

18   often happens, sex abusers have been the victim of sex abuse

19   themselves.  As a child he was abused physically and

20   sexually.  He turned to drugs.  He obviously has mental

21   health problems as shown by the records of the -- as

22   summarized in the presentence report shown by the records of

23   his incarceration since arrest in this case.  There have

24   been all sorts of mental health issues.  He even tried to

25   kill himself.

1        So we hope to get the kind of treatment that only the

2   federal system can provide in the penological setting.  And

3   at the end of this matter, when he is eventually released,

4   he will be required to respond for life to sexual reporting

5   requirements.  And that will assist in protecting the

6   public.  He'll be under a short leash, and he will be under

7   a microscope.  And that way -- no one can of course

8   guarantee the future, but we would hope that he in the

9   meantime with mental health treatment and drug addiction

10  treatment, also vocational training, that he can finally get

11  on a path of life which would be constructive.

12       And so I echo the government's concerns about

13  proceeding with this case, but likewise, on

14  Mr. Brown-Austin's behalf, we had to weigh the pros and cons

15  of a trial.  And we came to a negotiated result, which I

16  believe and submit to the Court is a fair resolution, and I

17  urge the Court to accept the plea agreement, Your Honor.

18            THE COURT:  All right.  Thank you.

19       As much as it pains me -- and only because the victims

20  will be better for not going to trial and having to testify,

21  and I understand the perhaps evidentiary proof issues as

22  well, but I would say primarily for the benefit of the

23  victims, that's why I'm going to accept the plea agreement,

24  and I'll say swallow it very -- in a very difficult way

25  because the conduct of this defendant vis-à-vis these

1    victims was, again, horrendous as described -- well

2    described in the PSR.  And what he did to them is really

3    unthinkable for people to have to endure that kind of, in my

4    mind, torture.

5         So, in that regard, it's for the benefit of the

6    victims and for the reasons stated on the record by both

7    AUSA Skutnik and Mr. DeVan that I will accept the

8    11(c)(1)(C) plea agreement and vary downward from the

9    guidelines range of 262 to 327 months of imprisonment to

10   impose a term of imprisonment of 180 months consistent with

11   that plea agreement.

12        Now, what is the government's position regarding the

13   JVTA $5,000 assessment, the imposition of a fine, and, more

14   specifically, whether Mr. Larrien Brown-Austin is indigent

15   for purposes of evaluating the assessment and/or fine?

16              MS. SKUTNIK:  Your Honor, the government does

17   not believe that Mr. Brown-Austin has the ability to pay a

18   fine.  The JVTA assessment of course -- the analysis is

19   prospective, his ability to earn in the future.

20        However, I guess I would couch my remarks this way.

21   If the JVTA was designed to create a fund so that victims

22   like SD could go to the fund with their expenses and submit

23   them, much the way that we do in the state system -- but it

24   is not up and running at this point because it's not funded

25   as it has not been in existence very long.

1          So if the Court is inclined to grant restitution of

2    some amount, whether it is some, all, or none of what is

3    being requested by SD and the other restitution request for

4    ML, then I would indicate I would rather have the money go

5    toward that restitution to them than to have money be

6    detracted to go to the JVTA.  And I don't mean to be -- I

7    don't mean to split my opinion that way, but I think that

8    that's the priority.

9          So if restitution is permissible -- well, I mean,

10   clearly there's no question, I think that the lost wages

11   analysis is easily applicable.  We of course believe that

12   restitution is mandatory and appropriate to whatever amount

13   the Court sees fit as it relates to SD's request, but we

14   believe that paying that in the statutory order of priority

15   is the number one priority.  Restitution first, then the

16   JVTA, then any fine.

17                   THE COURT:  All right.  Thank you.

18         Mr. DeVan, in terms of the JVTA and the fine -- we'll

19   get to a restitution here shortly, I understand that that's

20   interwoven with what AUSA Skutnik just placed on the

21   record -- but your thoughts?

22                   MR. DEVAN:  Well, a special assessment, no

23   matter what his financial situation, of $100, is required.

24                   THE COURT:  Yes.

25                   MR. DEVAN:  We acknowledge that.

1          But, likewise, we agree with the government.  He is

2    unable to pay 5,000.  And the exception to this mandatory

3    $5,000 statutory fine is if a person is unable to pay, and

4    I -- it appears clearly that he's unable to pay.

5                    THE COURT:  Well, that may be true today, but

6    I can look prospectively to see if he has the ability to pay

7    in the future.  I understand he's going to be in prison for

8    15 years, but nonetheless, he still could come out and

9    obtain a job and work.  And while he's in the prison system,

10   there are funds available to him as well that can be used,

11   even though they would be small and incremental, to pay the

12   assessment.

13                   MR. DEVAN:  Well, it says -- one of the

14   qualifications is on any nonindigent person.  By that

15   reasoning, anyone who is indigent could, you never know, win

16   the lottery, which I don't think is going to happen.  And so

17   I would request that -- that mandatory fine of 5,000 not be

18   imposed because of his indigency.

19         And although the Court says -- it considered,

20   rightfully so, what about the future, well, the point is at

21   this point in time.  And I would request that that 5,000

22   mandatory fine not be imposed because of his indigency at

23   this point, Your Honor.

24                   THE COURT:  The assessment you mean, the

25   $5,000 assessment?

1               MR. DEVAN:  Well, it's a five --

2               THE COURT:  Do you have --

3               MR. DEVAN:  It's a $5,000-per-count

4    assessment.  Yes.

5               THE COURT:  All right.  I think I disagree

6    with you on the -- yes, he's indigent as of now.  As he sits

7    here today, he's been incarcerated for many months now since

8    2020, but nonetheless, I do believe that under the law I can

9    evaluate his future ability to pay.

10        But, AUSA Skutnik, I'll hear from you on that.

11              MS. SKUTNIK:  The Court is correct.

12        And the government has placed that in its sentencing

13   memorandum at page 14 pursuant to *United States versus*

14   *Shepherd*, 922 F.3d 753:  "The Court must impose the

15   additional special assessment unless it finds that the

16   defendant is unable to pay; however, the defendant's current

17   and future financial status is to be evaluated when making

18   an indigency determination."

19        And I would point out that Larrien Brown-Austin has

20   the ability to work, he has -- he has received education, he

21   is physically capable of working, he has held employment in

22   the past when he was not choosing to make his money by

23   trafficking other women.  So in the future he certainly has

24   the ability to work while he's incarcerated and the ability

25   to work in the future when he is released and on supervised

1       release.  And I believe it is up to 25 years.  And I'm not

2       sure where I'm pulling that from, but that he -- he can be

3       required to pay this fine.

4            So in looking at it that way, I think the government's

5       argument is less about ability to pay because future

6       considerations are appropriate versus priorities.  But we

7       believe that he does have an ability to earn money, both

8       while incarcerated and while on supervised release, as

9       required by law.

10           THE COURT:  I think you also cited in your

11      sentencing memorandum -- AUSA Skutnik, you certainly cited

12      the *Shepherd* case that you just mentioned, but you also

13      cited *United States versus Kelley*, 861 F.3d 790 at 801, 802,

14      that's from the Eighth Circuit, 2017:  "Negative net worth

15      at the time of sentencing is not dispositive of the issue.

16      If at some point the defendant would be able to pay the

17      additional special assessment, this ability to earn money in

18      the future precludes finding of indigency for purposes of

19      section 3014."

20           Did I quote that correctly from your sentencing

21      memorandum at page 14 and 15, page IDs 1373 and 1374?

22                MS. SKUTNIK:  You have, Your Honor.

23                THE COURT:  And I think you go on to say that

24      you believe that Mr. Brown-Austin has the ability to earn

25      income, although if he remains clean, sober, and

1  law-abiding -- and you also mention -- I think you say in

2  fact the fine will not expire for 20 years, is that the fine

3  or the assessment?  Because you just said 25 years, and I'm

4  not sure --

5              MS. SKUTNIK:  I do stand corrected.  It is 20

6  years.  And the statutes that apply to the collection of

7  this money are the same that relates to a fine, and it is 20

8  years to collect this particular assessment, similar to a

9  fine.

10              THE COURT:  So if he's working while

11  incarcerated for these 15 years and then is able to secure

12  employment after he's released for up to five years, that

13  money could be used to pay the assessment, correct?

14              MS. SKUTNIK:  Actually, Judge, it's 20 years

15  from his release from custody.

16              THE COURT:  Then I misunderstood that.

17      Oh, yes.  For 20 days from the date of his release

18  from custody.  Thank you for that clarification.

19      Do you see that, Mr. DeVan, in the government's

20  sentencing memorandum?

21              MR. DEVAN:  Oh, yes.  I'm familiar with the

22  government's argument, Your Honor, and we simply don't agree

23  with that position, if it would, for the record.

24              THE COURT:  Thank you.

25      Now, to the issue of restitution, because it's

1        intertwined now with the assessment issue, at least

2        according to AUSA Skutnik, she would rather the Court impose

3        restitution for these particular victims as distinguished

4        from assessing or ordering the assessment of $5,000.

5                But what would you like to say concerning whether the

6        Court -- I understand there's an agreement, the defendant

7        isn't objecting to the amount already mentioned for the two

8        victims that will be -- Mr. Larrien Brown-Austin will be

9        jointly and severally liable for with his co-defendants,

10       Larry Brown-Austin and Shannon Marzano.

11               But what's the government's position with regard to

12       the request for restitution -- and I note that you cite

13       *In re: Sealed Case* as one of the cases in your brief.

14       Correct, AUSA Skutnik?

15                       MS. SKUTNIK:  Yes, Judge.  I believe I cited

16       that several times.  It's quite informative.

17                       THE COURT:  Have you seen the more recent

18       case, the negative treatment of that case from the Tenth

19       Circuit Court of Appeals, a case captioned *United States of*

20       *America versus Anthony* that was filed on October 31st, 2019?

21                       MS. SKUTNIK:  I did not review *Anthony*, Your

22       Honor.

23                       THE COURT:  And they actually talk about, you

24       know, of course the government has the responsibility, must

25       prove the restitution by a preponderance of the evidence.

1    And the issue I think that you raise under *In re: Sealed* --

2    and even defense counsel raises -- is whether or not the

3    losses were proximately caused by the defendant.  And in

4    *Anthony* they go on to state that it's more of a -- a more

5    stringent standard, it's but-for as distinguished from...

6          So did you want to read *Anthony*?  It's a stronger --

7    but, again, I understand that one's from the Tenth Circuit

8    and one from the DC Circuit.  And I haven't seen anything

9    from the Sixth Circuit.

10                    MS. SKUTNIK:  Your Honor, I accept the Court's

11   summary of *Anthony*, and I appreciate that.  It's curious

12   because in the child exploitation arena, the same issue went

13   to the Supreme Court in *Paroline*, and they rejected the

14   but-for --

15                    THE COURT:  Yes --

16                    MS. SKUTNIK:  -- analysis.

17                    THE COURT:  -- but *Anthony* discusses the

18   distinction between that because that was child pornography

19   as distinguished from trafficking of a minor or an adult, et

20   cetera.  So actually *Anthony* goes through that case from the

21   Supreme Court, makes the distinction, and nonetheless comes

22   down on the side of the standard or is but-for as

23   distinguished from proximately caused.

24                    MS. SKUTNIK:  However, even analyzing this

25   case in a but-for burden of causation, Your Honor, I believe

1    that still the factual basis here satisfies the but-for

2    relationship.  The activity that occurred in the house, the

3    trauma that was inflicted upon this young lady -- I say

4    young lady, she's -- but what was inflicted upon her at the

5    hands of this defendant, the violence, the fact that she had

6    absolutely no choice but to complete what was sometimes ten

7    or more sexual acts a day to make money for this defendant,

8    the fact that he would pull her out of bed if she was trying

9    to sleep after not having slept for days and throw her into

10    a shower so that she might be forced to complete sex acts,

11    the fact that she was threatened violence and that she

12    witnessed extreme violence in her presence in order to

13    compel her to engage in these acts in a very compact but

14    intense period of two months, coupled with the nonstop

15    administering of drugs to her that exacerbated her addiction

16    and --

17                    THE COURT:  When you say exacerbated her

18    addiction, are you saying that she was addicted to drugs

19    before her interactions with the defendant here?

20                    MS. SKUTNIK:  SD had used drugs.  Yes, she had

21    used drugs prior to interacting with this defendant.  She

22    had used heroin.

23                    THE COURT:  I thought that there was, in the

24    PSR, a representation that she had not.

25                    MS. SKUTNIK:  That would be --

1           THE COURT:  First exposure.

2           MS. SKUTNIK:  ML indicated in her statement

3   that she did not.

4           THE COURT:  Okay.  So SD had used previously,

5   correct, and had a substance abuse issue?

6           MS. SKUTNIK:  Yes.

7           THE COURT:  That was exacerbated by the

8   defendant's treatment of her to include giving her those

9   drugs, making her dope sick, et cetera, correct?

10          MS. SKUTNIK:  Yes.

11      And it is my understanding that SD was a heroin user,

12  had used heroin in the past, had received treatment in the

13  past, but that in addition to heroin in this house, the use

14  of methamphetamine was used to complement the effects of the

15  drugs so that she might be more productive for purposes of

16  trafficking.

17      And, again, that it was nonstop.  There was no

18  opportunity to walk away from the drugs, from the addiction,

19  from the behavior, from the violence.

20      And that that combination of factors has resulted in

21  incredible trauma for which she has sought and been

22  participating in not only drug treatment but also, as noted

23  in the restitution request, a complement of therapies to

24  include drug-assisted treatment for the heroin addiction as

25  well as therapy, intensive therapy to deal with the trauma

1   of the trafficking component as well.

2       I don't know if the Court wants me to stop here -- and

3   we're just talking about the but-for analysis, so -- or if

4   the Court wants me to keep going in terms of any remarks I

5   want to make about restitution.

6                   THE COURT:  I understand what you're saying.

7   I guess I'm going to ask you a few questions that come to my

8   mind, and certainly I'll give Mr. DeVan the opportunity to

9   speak as well to the restitution issue and the but-for

10  versus -- you have to prove this by preponderance of the

11  evidence, correct?

12                  MS. SKUTNIK:  (Indicating.)

13                  THE COURT:  Would you agree that the letter

14  that was sent by the ███████████████████ to the

15  Court -- did I misspeak?

16                  MS. SKUTNIK:  No.  I would just prefer that we

17  keep the location off of the record.

18                  THE COURT:  Yes.  I'm sorry.  That will be

19  under seal.

20      But, nonetheless, the report recommendation I received

21  is from a community director, correct?

22                  MS. SKUTNIK:  Yes.

23                  THE COURT:  And there's representations about

24  what other doctors opined, correct?

25                  MS. SKUTNIK:  Yes.

1           THE COURT:  But there's no report stating

2    anything to a reasonable degree of medical certainty or

3    psychological certainty or any of that, correct?

4           MS. SKUTNIK:  That's correct.

5           THE COURT:  And so I'm left -- and there's no

6    testimony to that effect, from what I see reading these

7    other opinions associated with restitution, there was either

8    grand jury testimony that was relied on, there were

9    written -- or there were testimony by witnesses, experts at

10   the hearing, I understand that a victim does not have to

11   testify, but I understand -- and I understand that the -- in

12   one case I believe what the victim may have told

13   investigators was part and parcel of what the Court

14   evaluated, but that was in conjunction with testimony

15   elicited at trial as well.  Am I wrong about that?

16       Because what I have a real problem with is the lack of

17   a true medical opinion relating the necessity of these

18   future expenses to the trauma that we know was endured.  And

19   I don't see anything in this recommendation acknowledging

20   prior issues with substance abuse or any records of

21   treatment already undertaken.  So that's what I have a major

22   problem with.  And also the -- but I guess that's the

23   biggest issue that I have with it.  There's nothing that's

24   stated to any kind of reasonable degree of certainty by a

25   medical or psychology professional, and certainly there's no

1    testimony.  And there's not even a report from those doctors

2    that are referred to by the counselor in this letter.

3                    MS. SKUTNIK:  I understand the Court's

4    concerns.  I can only offer the Court what I have.

5                    THE COURT:  All right.  What else would you

6    like to say then in support of request for restitution?

7                    MS. SKUTNIK:  Your Honor, I would submit to

8    this court that we know that the victim is undergoing these

9    treatments currently.

10                   THE COURT:  Well, see, I don't know that from

11   this letter.  All I know is that there was some -- something

12   began back in 2020, I think.  Let me see here.

13                        (Pause in the proceedings.)

14                   THE COURT:  Again, there's no real detail

15   about what's been happening.

16        Okay.  Began in November of 2020.  But I don't have

17   any information of what's been happening since then.  I

18   mean, certainly there's the incorporation of the diagnoses,

19   but there's no information concerning the treatment or how

20   she's doing or her attendance at treatment or anything that

21   would give me more information to evaluate whether the

22   future treatment is speculative or not.

23                   MS. SKUTNIK:  Sorry.  Your Honor, I read this

24   document to indicate that she is undergoing these therapies

25   presently, is how I read this document.

1          To be fair -- I understand what the Court is saying --

2     we can by statute adjourn and have up to 90 days to hold a

3     hearing if the Court would like me to produce medical

4     records to the extent that I'm capable of doing that.  It

5     is...

6               THE COURT:  And that's my primary concern is

7     that I don't have an expert, let's say.  There's got to be

8     somebody who's going to testify to a reasonable degree of

9     some certainty because I understand that's -- that's how we

10    do things in the civil world.  I understand this is

11    criminal.  But yet in terms of the preponderance of the

12    evidence is the same burden, whether it's civil or proving

13    your restitution, I don't have anything that demonstrates to

14    me, aside from what I know she experienced in the past,

15    whether or not -- this information just seems insufficient

16    to me.

17         And I have no problem continuing or giving you 90 days

18    to supplement with other information or testimony or reports

19    that detail the treatment and the bases for the opinions

20    expressed and an actual expression of that opinion in a

21    written report and/or affidavit from someone.

22              MS. SKUTNIK:  Well, Your Honor, I believe that

23    that would -- the government would be called upon to make

24    such a request because I don't -- I appreciate that there

25    are issues with awarding speculative or future restitution

1    matters, but what I don't want is for this woman to be

2    denied the opportunity to present additional evidence on her

3    claim for restitution as I do believe that these are all --

4              THE COURT:  And it's the proof issue too.

5    This is not sufficient proof, this letter.

6              MS. SKUTNIK:  I think that's what I'm speaking

7    to, Judge.

8              THE COURT:  Yes.

9              MS. SKUTNIK:  To afford her -- it is not my

10   obligation to collect additional evidence, but I want to

11   afford her the opportunity to provide additional

12   information, if they want to, to the Court, such that we

13   might hold a hearing and the Court might consider any

14   additional evidence that can be produced on behalf of her

15   restitution claim.

16        But I want to point out that by statute, that's a

17   separate hearing.  It does not have to -- we don't have to

18   toll this sentencing.

19              THE COURT:  Correct.

20              MS. SKUTNIK:  We can conclude sentencing --

21              THE COURT:  That I know.

22              MS. SKUTNIK:  -- on this matter and have that

23   hearing separately.

24              THE COURT:  All right.  Thank you.

25        Mr. DeVan, I have read the objection that you filed to

1      the restitution, and the other issue too is the other -- the

2      agreed-to amount is going to be imposed jointly and

3      severally, and I think part of Mr. DeVan's argument as to

4      the restitution requested by SD is that this defendant was

5      not the sole cause of the harm to the victim, SD, is that

6      correct?

7                    MR. DEVAN:  That's correct, Judge.

8           And I would add, in terms of any continuance to have a

9      hearing on a later date, our position is that our objections

10     are sufficient to overcome this claim of restitution by the

11     treatment center, unnamed treatment center.  Aside from the

12     $1,800 per defendant restitution, we're not speaking about

13     that.  We agree with that.  But the issue of the cost of

14     treatment at this treatment center in the future I think is

15     well-documented in our objections.

16                    THE COURT:  Well, the case law, though, that's

17     been cited by the government is that you can take into

18     account future costs.  My issue is not necessarily that

19     they're speculative, but they haven't been stated in a

20     legally sufficient way evidence-wise for me to consider.

21                    MR. DEVAN:  I understand.

22                    THE COURT:  And so that would then require a

23     hearing whereby that could be done, which is why I believe

24     AUSA Skutnik is requesting the additional 90 days to allow

25     the victims or SD to supplement the information to attempt

1    to secure that restitution.

2              MR. DEVAN:  I understand.

3              THE COURT:  But we're still left with the

4    joint and several liability issue, which -- I'm not sure how

5    that's going to be rectified since the other two defendants

6    have already been sentenced.

7              MS. SKUTNIK:  Well, Your Honor, I think what

8    is borne out in the facts of this case and in the

9    representations in front of the Court is while they may have

10   operated in a conspiracy, there is only one person in this

11   conspiracy that inflicted violence, threats of violence, the

12   presence of a firearm, and administered drugs.  No other

13   party to this conspiracy administered drugs to these young

14   women -- in particular, SD -- or threatened them or caused

15   physical violence upon them as this particular defendant, as

16   is reflected in the disparity in the sentencing because of

17   the respective roles of the parties.

18        So it is the allegation that while others, such as his

19   father, provided drugs to Larrien to be used in the

20   household and reaped the benefit of the money and that

21   Ms. Marzano participated in recruitment and containment in

22   obtaining methamphetamine, that it is this defendant that

23   has caused the trauma that is reflected in this restitution

24   agreement.

25        So we're not asking for joint and several

1      responsibility as it relates to this request.  And should

2      after hearing it be found, we believe that it lays solely on

3      the shoulders of this defendant.

4                      THE COURT:  All right.

5           I understand that argument.  But, nonetheless, I do

6      believe that the victim, SD, should be given that 90 days to

7      provide additional documentation, and that should also

8      include -- again, I don't have any reference in this letter

9      to an acknowledgment of prior issues with drugs to sort of

10     evaluate what would have been necessary independently of

11     this issue but certainly I think the offense conduct of the

12     defendant.  So I just need more information to be able to

13     fully evaluate what harm was caused to her and what

14     restitution is reasonable to impose if I have the

15     documentation necessary to do so.

16                     MS. SKUTNIK:  I appreciate the time from the

17     Court to address this issue.  Thank you.

18                     MR. DEVAN:  We would just hope to go forward

19     at least with the imposition of sentence today, if we can.

20                     THE COURT:  Oh, yes, we will.  Absolutely.

21     And that's why I asked at the beginning if anyone was

22     expecting an evidentiary hearing.  I didn't know if we would

23     have somebody testifying with an opinion or other

24     documentation submitted, I wasn't sure, but I knew from

25     reviewing the documentation that I had before me that it was

1    not sufficient.

2         All right.  Now, the other issue, though, that I have,

3    AUSA Skutnik, you would rather the Court impose restitution

4    specifically for the benefit of the victims, both SD and ML,

5    in lieu of an assessment, but with the restitution being an

6    issue to be decided in the future.  How does that impact

7    your argument associated with the $5,000 assessment?

8              MS. SKUTNIK:  Your Honor, the government's

9    position is -- and I mentioned briefly before -- that the

10   order of priority for collecting money from a defendant is

11   restitution, assessment, special assessment, fine.  I don't

12   anticipate a fine in this matter.  So I guess what I'm

13   saying is the Court is not precluded from imposing the

14   $5,000 special assessment under the Justice for Victims of

15   Trafficking Act if the Court finds that the defendant has

16   the future ability to pay this assessment.

17        And we are not arguing that he -- in fact, we argued

18   in our memorandum that he does have the ability to pay in

19   the future.  So we believe it would be appropriate for the

20   Court to order that, we would just -- I think our position

21   was we wanted to make sure that if there was going to be an

22   order of restitution, that the victims were covered, given

23   that statutorily that would take priority if there was a

24   future order, they would be taken care of.

25             So, with that being said, we do stand by our argument

41

1     that he has a future ability to pay a Justice for Victims of

2     Trafficking Act assessment of $5,000.

3                     THE COURT:  All right.  Thank you.

4          Now, Mr. DeVan, would you like to say anything else on

5     behalf of your client?

6          And then certainly I'll give your client the

7     opportunity to speak.

8                     MR. DEVAN:  Your Honor, I think that we've

9     pretty much exhausted all of the facts, both as to the facts

10    and circumstances of the case and history and

11    characteristics of the defendant.

12         And my client does have something to say, and I would

13    ask the Court to take that into consideration in imposing

14    his sentence and as grounds also to accept the plea

15    agreement as recommended by the parties.

16                     THE COURT:  Thank you.

17         And, Mr. Brown-Austin, you certainly have the right to

18    make a statement or present any information in mitigation.

19    Would you like to do so?

20                     THE DEFENDANT:  Yes, ma'am.

21                     THE COURT:  All right.  Please do.  Speak

22    directly into the microphone.

23         You may sit down.  It just makes it easier for our

24    court reporter to hear you if you're talking directly into

25    the microphone.

1                   THE DEFENDANT:  Thank you.

2          In 2018 I went to live at a home that my father owned.

3    I got involved with drugs and prostitution.  I know that

4    this is wrong, and I pled guilty because I accept

5    responsibility for my conduct.  And I understand that I must

6    serve a period of incarceration as punishment.

7          Your Honor, as alcohol impairs the ability to walk or

8    drive, heroin, meth along with other opiates, an

9    embarrassment, impaired my ability to think correctly, to

10   get the therapeutic help I needed from the sexual, physical,

11   and emotional abuse I suffered during my preadult years,

12   which factored into my decision to self-medicate throughout

13   my life instead of learning the proper coping skills to

14   break the cycle I was injured by.

15         As the courts gather information to make judgments,

16   I'm explaining how I made it before you today, not to make

17   excuses.

18         I'm asking, first to all, those that I've hurt in any

19   way to please forgive me.  The person I was when we were

20   doing drugs together is not the person I am, and it isn't

21   the person I want to be.  I do wish more than anything that

22   I can take every second of the past we shared back.  Knowing

23   that's impossible, I can only pray for forgiveness.

24         And I realize that I don't have the right to ask for

25   mercy, but I'm sincerely hopeful for compassion and

1    understanding of how I became this way so that while I'm

2    paying my debt to society, you will recommend that I receive

3    mental health and drug treatment.  I am determined to turn

4    my life around so that I will be an asset to my family, my

5    community, and not a liability.

6        Thank you, Your Honor, for allowing me to speak.

7              THE COURT:  Thank you.

8        Anything to add on behalf of your client, Mr. DeVan?

9              MR. DEVAN:  No, Your Honor.  But I would

10   accept -- I would ask for a recommendation to Victorville

11   FCI Medium --

12             THE COURT:  I'm sorry.  Could you repeat that,

13   please.

14             MR. DEVAN:  That's Victorville Medium II

15   institution.  His mother is moving to the Las Vegas area,

16   and at least she'll be within a day's drive from seeing him

17   from time to time.  Victorville, California.  The medium II

18   institution I believe is his security level.  And of course

19   that's a recommendation.

20       I would also ask for a recommendation for mental

21   health treatment, sexual offender treatment as well as drug

22   abuse if he qualifies for the RDAP program, the Residential

23   Drug Abuse Program, or any other drug and addiction program

24   they might have available.

25             THE COURT:  All right.  Thank you.

1          Any final statement on behalf of the government?

2                    MS. SKUTNIK:  Your Honor, while I think that

3     there are many facts that belie the statement made by the

4     defendant here in court today, I find no purpose on drilling

5     down on those as I'm asking the Court to accept the agreed

6     sentence.  And it doesn't matter when the defendant started

7     engaging in this behavior and so on.

8          So I have nothing further to add.  Thank you very much

9     for allowing me to speak.

10                    THE COURT:  Thank you.

11         As noted, I have accepted the 11(c)(1)(C) plea

12    agreement for the reasons already stated on the record.

13    Even in doing so, I have considered the relevant factors set

14    out in Title 18, United States Code, Section 3553(a).  And

15    certainly in my mind those factors weigh heavily in terms of

16    the offense conduct.  And what happened to these two

17    victims, that weighs in favor of a longer period of

18    incarceration as does the history and characteristics of the

19    defendant.

20         I understand what's been said today by the defendant

21    himself and in the letters that were written to me, but I

22    also understand from reading the PSR that the very mom who

23    wrote a letter of recommendation on Mr. Brown-Austin's

24    behalf was in communication with him early on to try to

25    contact one of the victims.  That's in the PSR.  So I'm not

1    sure that I give any credibility to that particular letter

2    of recommendation.  That's the only one I can speak to

3    because her conduct vis-à-vis the defendant is documented in

4    the PSR in terms of phone calls from the jail.

5        So I do believe, again, for the reasons of ensuring

6    that the victims are not retraumatized, and they agree with

7    the plea agreement, and for that reason and to a certain

8    extent to the issues of proof at trial, given the

9    circumstances as to how this came -- the investigation and

10   the charges that came to be, that's why I am agreeing to

11   impose the 180-month sentence of imprisonment in this case.

12       So I don't think I need to belabor any more.

13       Do you, Mr. DeVan?

14               MR. DEVAN:  No, Your Honor.  I think as a

15   matter of statutory law he automatically gets credit for

16   time served.  He's been in jail for two-and-a-half years at

17   this point.

18               THE COURT:  Yes.  I understand that.  But in

19   terms of setting forth the factors for my sentencing that

20   I'm going to impose.

21               MR. DEVAN:  I think you were very thorough,

22   Judge, and I thank you.

23               THE COURT:  AUSA Skutnik, are you satisfied as

24   well?

25               MS. SKUTNIK:  We are, Judge.  Thank you.

1           THE COURT:  Thank you.

2           Pursuant to the Sentencing Reform Act of 1984 and

3      Title 18, United States Code, Section 3553(a), it is the

4      judgment of the Court that the defendant, Larrien

5      Brown-Austin, is hereby committed to the custody of the

6      Bureau of Prisons for a term of 180 months.

7           Upon release from imprisonment, you shall be placed on

8      supervised release for a term of life.

9           Within 72 hours of release from the custody of the

10     Bureau of Prisons, you shall report in person to the United

11     States Pretrial Services and Probation office in the

12     sentencing district or in the district to which you are

13     released.

14          Based upon a review of your financial condition as set

15     forth in the presentence report, the Court finds that you do

16     not have the ability to pay a fine, and the Court waives the

17     fine in this case.

18          You must pay to the United States a special assessment

19     of $100, which is due immediately.

20          And the Court finds based upon the information already

21     placed on the record in its own evaluation of same, given

22     your age, your term of imprisonment of 15 years, the fact

23     that you have 20 years thereafter to pay the assessment, and

24     you should be able to find employment particularly since I'm

25     going to request that mental health treatment, sex abuse

1    treatment, and RDAP programming or substance abuse

2    treatment, that hopefully you will come out on the other end

3    drug free and able to go forth and find and secure a job

4    whereby you can make the payment associated with that

5    assessment.  But I am imposing that $5,000 assessment.

6         Now, in terms of the restitution, I'm going to hold

7    that issue in abeyance and allow the United States

8    Attorney's Office to confer with victim SD to see if that

9    victim would like to pursue the restitution, as she's

10   requested by way of this letter, with additional proof and

11   information to be supplied to the Court.

12        In terms of the agreed-upon restitution, I will make

13   that part of the ultimate restitution order.

14        Would you agree with that, AUSA Skutnik?

15             MS. SKUTNIK:  I'm okay with that, Judge.

16             THE COURT:  And are you okay with that,

17   Mr. DeVan?

18             MR. DEVAN:  Yes, Judge.

19             THE COURT:  So I certainly will order that

20   restitution to both Victims 1 and 2 as agreed upon, and that

21   would be joint and several with co-defendants Larry

22   Brown-Austin and Shannon Marzano.

23        But the open issue is the additional restitution

24   requested by Victim SD.  All right?

25        So we'll see what is provided to us.  Obviously that's

1    got to be done in 90 days and have a hearing, if that's

2    requested, to evaluate that information.

3                    MR. DEVAN:  Will my client be held locally and

4    be required to be at that hearing or --

5                    THE COURT:  I would believe that we could have

6    him by Zoom.  We would have to check with the facility where

7    he's at.

8                    MR. DEVAN:  I'd prefer to have him move along

9    into the Bureau of Prisons system and begin his sentence,

10   Your Honor.

11                   THE COURT:  Now, we always are working with

12   conducting Zoom hearings, you know, with individuals that

13   are detained locally.

14       AUSA Skutnik, are you familiar with the Bureau of

15   Prisons' ability to conduct hearings by Zoom?

16                   MS. SKUTNIK:  I have no personal experience

17   with that.  I can't imagine any reason why we couldn't.  And

18   we'll definitely look into that.

19                   THE COURT:  All right.

20       I agree with you.  I think he should move along into

21   the federal prison system, and we will work to have him or

22   attempt to have him appear by Zoom for the hearing on the

23   restitution.  Of course that's going to be dependent, too,

24   on what SD would like to do in terms of...

25       Now, if the time of 90 days comes and goes and we

1      haven't been notified of any additional information or

2      request for hearing, then I'll just issue the restitution

3      order consistent with what the parties have agreed to

4      jointly and severally as to the co-defendants.  All right?

5          But, otherwise, certainly your client needs to be

6      present for that.

7          You would agree with that, AUSA Skutnik, that the

8      defendant needs to be present for that restitution hearing?

9                    MS. SKUTNIK:  Yes.

10                   THE COURT:  So we'll make that happen one way

11     or the other.

12                   MR. DEVAN:  Virtually or otherwise.

13                   THE COURT:  Yes.  As long as he agrees to

14     appear by video.

15                   MR. DEVAN:  He will.

16                   THE COURT:  All right.  Now, while on

17     supervision, you must comply with the mandatory and standard

18     conditions that have been adopted by this court and set

19     forth in Part D of the presentence investigation report, and

20     you must also comply with the following additional

21     conditions.

22         You must refrain from any unlawful use of a controlled

23     substance and submit to one drug test within 15 days of

24     release from imprisonment and to at least two periodic drug

25     tests thereafter as determined by the Court.

1      You must participate in a sex offense-specific

2  assessment.

3      You must provide the probation officer with access to

4  any requested financial information and authorize the

5  release of any financial information.  The probation office

6  may share financial information with the U.S. Attorney's

7  Office.

8      You must not incur new credit charges or open

9  additional lines of credit without the approval of the

10  probation officer.

11      You shall participate in an approved program of

12  substance abuse testing and/or outpatient or inpatient

13  substance abuse treatment as directed by your supervising

14  officer and abide by the rules of the treatment program.

15  The probation officer will supervise your participation in

16  the program to include provider, location, modality,

17  duration, intensity, et cetera.

18      The defendant shall not obstruct or attempt to

19  obstruct or tamper in any fashion with the efficiency and

20  accuracy of any prohibited substance testing.

21      You must undergo a mental health evaluation and/or

22  participate in a mental health treatment program and follow

23  the rules and regulations of that program.

24      The probation officer, in consultation with the

25  treatment provider, will supervise your participation in the

1      program to include provider, location, modality, duration,

2      intensity, et cetera.

3           You must submit your person, property, house,

4      residence, vehicle, papers, computers as defined in

5      Title 18, United States Code, Section 1030(e)(1), other

6      electronic communications or data storage devices or media

7      or office to a search conducted by a United States Probation

8      officer.  Failure to submit to a search may be grounds for

9      revocation of release.

10          You must warn any other occupants that the premises

11     may be subject to searches pursuant to this condition.

12          The probation officer may conduct a search under this

13     condition only when reasonable suspicion exists that you

14     have violated a condition of supervision and that the areas

15     to be searched contain evidence of this violation.  Any

16     search must be conducted at a reasonable time and in a

17     reasonable manner.

18          You must apply all monies received from income tax

19     refunds, lottery winnings, judgments, and/or any other

20     anticipated or unexpected financial gains to the outstanding

21     court ordered financial obligations.

22          Pursuant to Title 18, United States Code,

23     Section 3583, you are required to register under the Sex

24     Offender Registration and Notification Act, and you must

25     comply with the requirements of that act as directed by the

1    United States Pretrial Services and Probation officer.

2         Pursuant to the Adam Walsh Child Protection Act of

3    2006, you will keep the registration current in each

4    jurisdiction in which you reside, are employed, or are a

5    student.  You must no later than three business days after

6    each change in name, residence, employment, or student

7    status appear in person in at least one jurisdiction in

8    which you are registered and inform that jurisdiction of all

9    changes in reporting information.  Failure to do so may be a

10   violation of your conditions of supervised release and may

11   be a new federal offense punishable by up to ten years.

12        You must not communicate or otherwise interact in any

13   way, shape, or form with Victim 1 and Victim 2, either

14   directly or through anyone else.

15        You must not have direct contact with any child you

16   know or reasonably should know to be under the age of 18,

17   including any of your own children, without the permission

18   of the probation officer.  If you do have any direct contact

19   with any child you know or reasonably should know to be

20   under the age of 18, including your own children, without

21   the permission of the probation officer, you must report

22   this contact to the probation officer within 24 hours.

23   Direct contact includes written communication, in-person

24   communication, or physical contact.  Direct contact does not

25   include incidental contact during ordinary daily activities

1    in public places.

2         You must submit to periodic polygraph testing at the

3    direction of the probation officer as a means to ensure that

4    you are in compliance with the requirements of your

5    supervision or treatment program.

6         You must participate in a sex offense-specific

7    treatment program and follow the rules and regulations of

8    that program.  The probation officer will supervise your

9    participation in the program to include provider, location,

10   modality, duration, intensity, et cetera.

11        You are prohibited from accessing any computer, online

12   computer service, Internet service provider, bulletin board

13   system, or any other public or private computer network or

14   the service at any location, including employment or

15   education, without prior written approval of the United

16   States Pretrial Services and Probation officer or the Court.

17   Any approval shall be subject to any conditions set by the

18   United States Pretrial Services and Probation officer or the

19   Court with respect to that approval.

20        The defendant shall consent to the United States

21   Pretrial Services and Probation Office conducting periodic

22   unannounced examinations of his computer systems, which may

23   include retrieval and copying of all memory from

24   hardware/software, and/or removal of such systems for the

25   purpose of conducting a more thorough inspection, and will

1  consent to having installed on his computer at his expense

2  any hardware/software to monitor his computer use or prevent

3  access to particular materials.

4      The defendant hereby consents to periodic inspection

5  of any such installed hardware/software to ensure it is

6  functioning properly.

7      The defendant shall provide the United States Pretrial

8  Services and Probation Office with accurate information

9  about his entire computer system, hardware/software, all

10  passwords used by him, and his Internet service providers.

11      You must allow the probation officer to install

12  computer monitoring software on any computer, as that term

13  is defined in Title 18, United States Code,

14  Section 1030(e)(1), that you use.

15      You must not date or befriend anyone who has children

16  under the age of 18 unless approved in advance by the

17  probation officer.

18      You must not reside within 1,000 feet of a school or

19  daycare center without the express written approval of the

20  probation officer.

21      Now, in accordance with Mr. DeVan's request, the Court

22  will make recommendations to the Bureau of Prison.  And

23  they're only recommendations.  The ultimate decision making

24  is up to the Bureau of Prisons.  But I will make a

25  recommendation that you be placed at Victorville Medium II

1          Institution; that you receive mental health treatment,

2          sexual abuse treatment; that you be evaluated for

3          eligibility for participation in the RDAP program and any

4          other substance abuse treatment available at the facility.

5               I will also make the recommendation to the Bureau of

6          Prisons that you receive credit for all time served relative

7          to this matter.

8               And at this time I would like to advise you of your

9          appellate rights before we address any other final matters.

10              Mr. Larrien Brown-Austin, you can appeal your

11         conviction if you believe that your guilty plea was somehow

12         unlawful or involuntary or if there is some other

13         fundamental defect in the proceedings that was not waived by

14         your guilty plea.

15              Under some circumstances a defendant also has the

16         right to appeal the sentence.  I'm not sure that these

17         circumstances are present in this case, but, nonetheless,

18         any notice of appeal must be filed within 14 days of the

19         entry of judgment or within 14 days of the filing of a

20         notice of appeal by the government.  If requested, the clerk

21         will prepare and file a notice of appeal on your behalf.  If

22         you cannot afford to pay the cost of an appeal or for

23         appellate counsel, you have the right to apply for leave to

24         appeal in forma pauperis, which means you can apply to have

25         the Court waive the filing fee.  On appeal you may also

1    apply for court-appointed counsel.

2          Are there any objections, AUSA Skutnik?

3                MS. SKUTNIK:  No objections, Your Honor.

4                THE COURT:  Thank you.

5          Any objections, Mr. DeVan?

6                MR. DEVAN:  Our only objection is to the

7    imposition of the $5,000 restitution order.

8                THE COURT:  You mean assessment?

9                MR. DEVAN:  Yes.  Special assessment rather.

10   I keep saying that.

11               THE COURT:  JVTA assessment.

12               MR. DEVAN:  But that may become moot depending

13   on our hearing in the future.  Just for the record I wanted

14   to make my objection.

15               THE COURT:  Certainly.  Thank you.

16         Now, are there any other matters that we need to

17   address to resolve this case for now pending the restitution

18   issue coming up for hearing perhaps if the victim, SD, is

19   able to garner additional support?

20               MS. SKUTNIK:  Two things, Your Honor.

21         First, the government would move to dismiss Counts 2

22   and 3 of the indictment pursuant to the plea agreement.

23         And second, Your Honor, the government would seek an

24   order of destruction for items that were seized in

25   connection with this case, which would include illegal

1    narcotics, drug paraphernalia, a Smith & Wesson firearm.

2    There was $450 in currency.  And then during a second

3    subsequent search warrant there were some documents that

4    were seized from the bedroom of the defendant, paperwork,

5    writings of his.  We can file a motion with the Court for

6    destruction.  I wouldn't expect an objection to the

7    destruction of that material, but I certainly can't speak

8    for Mr. DeVan.

9              THE COURT:  Are you talking about the firearm

10   as well and the cash or just --

11             MS. SKUTNIK:  The firearm as well.

12             THE COURT:  Destruction of the firearm and the

13   cash?  You said that there was 450 --

14             MS. SKUTNIK:  It was 450 -- I don't know what

15   they do with the cash, maybe it goes toward the JVTA, but

16   certainly the illegal narcotics, the drug paraphernalia, the

17   paperwork, there were two cell phones, and the firearm, and

18   condoms.

19             THE COURT:  And what?

20             MS. SKUTNIK:  Condoms.

21             THE COURT:  So the only thing you're not sure

22   about is the cash?

23             MS. SKUTNIK:  Well, in terms of --

24             THE COURT:  I wouldn't think that you would

25   destroy the cash, would you?

1          MS. SKUTNIK:  We did not file a forfeiture as

2     part of the indictment, so I'm not sure that we have the

3     ability to seize the currency, although I'm not sure that we

4     know who that currency belongs to.  But, for purposes of

5     destruction, I'm going to take cash out of the equation, and

6     I'm going to just talk about those other things that I

7     enumerated.

8          THE COURT:  All right.  Mr. DeVan, your

9     position with regard to that request for an order of

10    destruction as to all of those items just identified by AUSA

11    Skutnik with the exception of the cash?

12         MR. DEVAN:  With the exception of the cash, we

13    do not object to any of the destruction of the items that

14    she has identified.

15         And I suggest that as to the cash, perhaps we can

16    further discuss that, it may become an issue regarding our

17    future hearing on restitution.

18         THE COURT:  Again, though -- and I don't know

19    what that discussion is going to entail, but I think you

20    mentioned you're not sure who the cash belongs to, and it

21    was found in the house, correct?

22         So that could be Shannon Marzano, that can be Larry

23    Brown-Austin, that can be Larrien Brown-Austin, but you'll

24    deal with that then, right?

25         MR. DEVAN:  Yeah.

1          THE COURT:  So I will, in accordance with the

2    government's motion, dismiss Counts 2 and 3 of the

3    indictment consistent with the plea agreement as to Larrien

4    Brown-Austin.

5          And I will issue that order of destruction as to the

6    items identified by AUSA Skutnik.  Everything with the

7    exception of the cash.

8          And certainly the two of you are free to evaluate that

9    issue for purposes of perhaps how that might be used going

10   forward.

11         MS. SKUTNIK:  Thank you, Your Honor.  I'll

12   supply a list to your deputy.

13         THE COURT:  Yes.  That would be great.  Thank

14   you very much.

15         Anything else on behalf of the defendant?

16         MR. DEVAN:  Nothing further, Judge.  Thank

17   you.

18         THE COURT:  Thank you.

19         When do you foresee having any information for the

20   Court and Mr. DeVan about a future hearing within 90 days?

21         MS. SKUTNIK:  Your Honor, I will confer with

22   the victim and her representatives and report back to

23   Mr. DeVan and to the Court, perhaps in three to four weeks.

24         THE COURT:  That's fine.  Just as long as we

25   can get everything done within that 90-day window is fine.

1          And I just want you to understand, the victim as well,

2     I understand that she has suffered harm, I understand that

3     there are losses associated therewith, but these are legal

4     issues that I have to address to make sure that if and when

5     I impose that order of restitution, it's a valid one under

6     the law.

7                    MR. DEVAN:  Understood.

8                    THE COURT:  Thank you, all.

9          And the defendant is remanded to the custody of the

10    U.S. Marshal.

11              (Proceedings concluded at 10:52 a.m.)

12

13

14                    **C E R T I F I C A T E**

15

16         I certify that the foregoing is a correct transcript

17    of the record of proceedings in the above-entitled matter

18    prepared from my stenotype notes.

19
                    */s/ Gregory S. Mizanin        December 7, 2022*
20                  GREGORY S. MIZANIN, RDR, CRR            DATE

21

22

23

24

25