1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                  EASTERN DIVISION AT CLEVELAND

3
     UNITED STATES OF AMERICA,        CASE NO. 5:20-cr-114
4
                   Plaintiff,
5
          vs.                         Thursday, January 6, 2022
6
     LARRIEN BROWN-AUSTIN,
7
                   Defendant.
8

9

10              TRANSCRIPT OF **CHANGE OF PLEA PROCEEDINGS**
                      HELD VIA VIDEOCONFERENCE
11            BEFORE THE HONORABLE PAMELA A. BARKER
                   UNITED STATES DISTRICT JUDGE
12

13

14   APPEARANCES:

15   For the Plaintiff:       Carol M. Skutnik,
                              Assistant United States Attorney
16

17
     For the Defendant:       Mark R. DeVan, Esq.
18

19

20   Official Court Reporter:  Lance A. Boardman, RDR, CRR
                               United States District Court
21                             801 West Superior Avenue
                               Court Reporters 7-189
22                             Cleveland, Ohio 44113
                               216.357.7019
23

24
     Proceedings recorded by mechanical stenography; transcript
25   produced by computer-aided transcription.

1              (On the record at 10:01 a.m.)

2              THE COURT:  We are on the record in the matter

3    captioned the United States of America vs. Larrien

4    Brown-Austin.  This is Case Number 5:20-cr-114-1.

5         Present by way of videoconferencing are the defendant,

6    Larrien Brown-Austin, his counsel, Mr. Mark DeVan, and

7    United States Assistant Attorney Carol Skutnik.

8         We are conducting this hearing by way of

9    videoconferencing.

10        Mr. DeVan, did you speak with your client,

11   Mr. Brown-Austin, concerning his right to be present in the

12   courtroom for purposes of this hearing today and did he

13   consent to having it take place by way of videoconferencing?

14              MR. DeVAN:  I did.  However, this morning he

15   indicated to me he thought we were going to be present in

16   the courtroom.  So I don't know if it's a matter of

17   confusion or someone may have overlooked something, but

18   perhaps the Court wants to examine him in that regard.

19              THE COURT:  All right.  Thank you, Mr. DeVan.

20        Mr. Brown-Austin, you do have the right to be present

21   in the courtroom for purposes of this hearing, but you also

22   have the ability to consent to having it take place by way

23   of videoconferencing pursuant to a standing order that has

24   been issued by this Court.

25        Did Mr. DeVan explain to you your right to be present

1    in the courtroom, Mr. Brown-Austin?

2                    THE DEFENDANT:  He said he did, but I don't

3    remember that, Your Honor.  I would like to be in the

4    courtroom, please.

5                    THE COURT:  You would like to be present in

6    the courtroom?

7        Do you understand -- I don't know what the specific

8    protocols are now for the facility where you are being

9    detained, but do you understand that to come to the

10   courtroom may entail, then, you being quarantined upon

11   return because of the COVID-19 pandemic that continues to

12   rage?

13                   THE DEFENDANT:  Yes, ma'am.  I don't mind.

14   But, I mean -- I think maybe the prosecutor may -- is there

15   something wrong?

16       Mr. DeVan, is there something wrong with that?

17                   MR. DeVAN:  No, there's nothing wrong at all,

18   Larrien.

19                   THE DEFENDANT:  I don't know, I saw the

20   prosecutor shake her head and then Mr. DeVan looked down, so

21   I'm not sure.  Am I doing something wrong?

22                   MR. DeVAN:  No, you're not doing anything

23   wrong, Larrien.  The problem is we've had this discussion,

24   and now we're going around in circles.

25       Now, it's very simple.  The Court wants to know

1    whether you consent to go by video.  If you don't, we

2    don't --

3                    THE DEFENDANT:  I don't mind being

4    quarantined.  I don't mind being quarantined.  I

5    just heard -- the only reason why, if you want to know why I

6    want to go by court, is because I've heard rumors -- I've

7    never done this before, but I've heard rumors that if the

8    inmates are talking, that -- and there's something that the

9    lawyer doesn't want the inmate to say or the prosecutor

10   doesn't want the inmate to say, then it's easy to press

11   "mute" and you're muted.  Then the stenographer, he's not

12   able to do his job or something.  And that's the only reason

13   why.

14                   THE COURT:  All right.  Let me explain,

15   Mr. Brown-Austin.  It's not a matter of muting.  That's not

16   accomplished.  The only time that a hearing or any portion

17   thereof is not on the record per the court reporter taking

18   everything down is if you request the opportunity to speak

19   with your lawyer privately to confer with him about any

20   questions that you have or any issues you want to discuss

21   with him.  Then the Court will put you and Mr. DeVan only in

22   the breakout room, what we call a breakout room, to allow

23   you to discuss any questions or issues privately.

24   Otherwise, everything by way of videoconferencing is taken

25   down on the record.  The breakout room is just to allow you

1    to confer privately and discuss any issues privately outside

2    of the hearing of anyone else with your lawyer.

3                 THE DEFENDANT:  Yes, ma'am.  Thank you.  I

4    appreciate you for explaining that to me.  I didn't

5    understand that.  Thank you.

6         Is it possible I can take a moment with my lawyer in

7    the breakout room?  Because I have two questions to ask him.

8    Is it possible that I can do that, ma'am?

9                 THE COURT:  Yes.  In fact, we can put you in

10   that breakout room right now.  And again, that means that no

11   one else can or will hear your discussion with your lawyer.

12        So Mr. DeVan, are you prepared, then, to go forward

13   with a discussion with Mr. Brown-Austin in a breakout room?

14                 MR. DeVAN:  Yes, ma'am.

15                 (Attorney-client conference in breakout room.)

16                 THE COURT:  All right.  Mr. Larrien

17   Brown-Austin is back and Mr. DeVan as well.

18        Mr. DeVan, what would you like to say, sir?

19                 MR. DeVAN:  A request, Your Honor, is

20   regarding in the written plea agreement there is a phrase at

21   the end of a sentence that my client takes issue with

22   because it might make him look as though he informed on his

23   father, which he has not.  And when we get to that in the

24   factual basis for the plea agreement, I will request that

25   that phrase be stricken.  It is at -- it is on page 8, and

1    it is paragraph 22b, the last phrase of the last sentence of

2    the paragraph b that Larry Brown-Austin -- reading it

3    paraphrased, that Larry Brown-Austin supplied Larrien

4    Brown-Austin with heroin.

5         My client's concern is that it might make it look as

6    though he has informed on his father as being a supplier of

7    drugs, which he did not.

8              THE COURT:  All right.  Ms. Skutnik, anything

9    to add with regard to that request before we actually get

10   into the plea?

11             MS. SKUTNIK:  Well, Your Honor, we would

12   object to that request.  Those are the facts of the case as

13   established during the investigation.  There is no

14   indication in that paragraph that that information came from

15   Larrien Brown-Austin.  We actually did a full investigation

16   in this case, and that's what the facts reflect.

17             THE COURT:  Correct.  There's no reference to

18   Mr. Larrien Brown-Austin providing that information.

19        Would you agree, Mr. DeVan?

20             MR. DeVAN:  That's correct.  That's not what

21   the paragraph says.

22             THE COURT:  All right.  And so the Government

23   would oppose or does oppose removing that last sentence in

24   paragraph b -- or paragraph 22b.

25        Any response, Mr. DeVan?  I understand --

1           MR. DeVAN:  The only thing I would say is that

2   it doesn't change the substance of the plea to remove it.

3   And if it expedites this matter and facilitates a resolution

4   here, I don't know that it would make any substantive change

5   in the plea agreement whatsoever.  It would simply satisfy

6   my client's understanding of the facts based on his

7   knowledge of it and having the firsthand knowledge of who

8   did what during this case.

9           THE COURT:  Well, are you saying then that

10  absent removing that sentence from paragraph 22b, your

11  client, Mr. Larrien Brown-Austin, will not plead?

12          MR. DeVAN:  At this point, Your Honor, I don't

13  know what he will do.

14          THE COURT:  All right.  I'll inquire, then, of

15  Mr. Larrien Brown-Austin.

16      You've heard the discussion, Mr. Brown-Austin,

17  correct?

18          THE DEFENDANT:  Yes, ma'am.

19          THE COURT:  All right.  And you understand

20  that although you requested that that sentence set forth in

21  paragraph 22b, specifically the last sentence, you've

22  requested that that be deleted or removed from the plea

23  agreement, you've heard AUSA Skutnik object to removing it

24  because it sets forth a fact or facts that were gathered

25  from the investigation.  And her position and agreement by

1    your attorney is that it doesn't in fact say that you

2    provided that information.

3         What's your position?  Are you saying that you are not

4    going to enter into a change of plea if that sentence is not

5    removed?

6              THE DEFENDANT:  Ma'am, I'm not saying that,

7    Your Honor.  What I am saying is that I have to sign my name

8    to that statement.  And once I put my initials by that

9    statement, then that statement verifies that I also agree to

10   that statement, which means that I co-signed for that

11   statement saying that I put my stamp, my word -- I'm putting

12   my life on the line for that statement.  And that's what I'm

13   saying, ma'am.

14             THE COURT:  All right.  I understand that.  I

15   understand.

16        I have the written plea agreement in front of me

17   consisting of 13 pages that you signed it looks like on

18   12/30/2021.  You did initial the bottom of each page

19   signifying that you read each page, understood the

20   information contained thereon.

21        But again, my question goes to if that is not removed,

22   are you then not going to enter into the change of plea?

23             THE DEFENDANT:  I'm still going to enter into

24   the change of plea, Your Honor.  I was just asking, please,

25   could you strike that one sentence.  It was something that I

1    admit I did overlook because of the way of the wording.  It

2    was wonderful wording on how it was worded, ma'am, and I did

3    not pay attention to that and I apologize.

4              THE COURT:  That's all right.  But you're

5    saying that you will still enter into the change of plea

6    even if it's still included in the plea agreement, and

7    Ms. Skutnik has noted her objection to removing it.

8         So if I don't remove it though, you are still going to

9    enter into the change of plea; is that correct?

10             THE DEFENDANT:  Yes, ma'am.  I would have no

11   choice.  Yes, ma'am.

12             THE COURT:  Ms. Skutnik, anything to add in

13   that regard?

14             MS. SKUTNIK:  Your Honor, first of all, the

15   Government will not remove that fact from the plea

16   agreement.  And that's because the paragraph says, and the

17   requirement under Criminal Rule 11 is, that these are the

18   facts the Government could prove, the Government could prove

19   if this case were to proceed to trial.

20        The other thing that I would note, Your Honor, is that

21   the defendant's father, Larry Brown-Austin, has pled guilty

22   in this case and admitted in his change of plea that he

23   provided drugs in this case.  So that set of facts is also

24   in the father's change of plea as well.

25        And so we're prepared to move forward and Mr. Brown is

1    prepared to move forward, but we won't be removing that from

2    the plea agreement narrative.

3                        THE COURT:  All right.  Thank you.

4           Mr. DeVan, any final comments on this issue?

5                        MR. DeVAN:  Nothing further, Judge.

6                        THE COURT:  All right.  Thank you.  We will

7    continue.

8           Now, just to clarify again, Mr. Brown-Austin, you are

9    consenting to having this hearing take place by way of

10   videoconferencing; is that correct?

11                       THE DEFENDANT:  Yes, ma'am.

12                       THE COURT:  All right.  Thank you.

13          The hearing then can and will proceed by way of

14   videoconferencing.

15          Mr. DeVan, will you please state the purpose of

16   Mr. Larrien Brown-Austin's appearance in this hearing today.

17                       MR. DeVAN:  The purpose of his appearing today

18   by videoconference, Your Honor, is to enter a plea agreement

19   in this matter pursuant to Rule 11(c)(1)(C) of the Federal

20   Rules of Criminal Procedure.

21                       THE COURT:  All right.  Thank you.

22          And AUSA Skutnik, I just want to make sure the victims

23   have been notified of this hearing.  Is that correct?

24                       MS. SKUTNIK:  They have, Your Honor.

25                       THE COURT:  All right.  And they've been

1   notified of the plea agreement; is that correct?

2                 MS. SKUTNIK:  I did meet and have a meeting

3   with both victims and reviewed the plea agreement with them.

4   They've been fully notified of the plea, yes.

5                 THE COURT:  And of their right to be present

6   for purposes of this hearing; is that correct?

7                 MS. SKUTNIK:  Yes, Your Honor.  And we have

8   provided the information for today's hearing to them if they

9   chose to sign in or listen.

10                 THE COURT:  All right.  Thank you very much.

11        Now, Mr. Brown-Austin, before I may accept a plea of

12   guilty from you, I must ask you a series of questions.  If

13   you have any questions at any time throughout this hearing,

14   please do not hesitate to let me know that because I will

15   give you the opportunity to speak with your lawyer.

16        Will you do that, sir?

17                 THE DEFENDANT:  Yes, ma'am.

18                 THE COURT:  Also, and as you've already done,

19   if you want to speak with your lawyer, you may do so by way

20   of a breakout room session.  So if you would like to speak

21   with your lawyer, I just want to confirm with you that we

22   will put you in a breakout room so that you can confer with

23   him privately.

24        Do you understand that, sir?

25                 THE DEFENDANT:  Yes, ma'am.

1          THE COURT:  All right.  Thank you.

2      Kim, would you please administer the oath to

3  Mr. Brown-Austin.

4              (The defendant was sworn.)

5          THE COURT:  All right.  Thank you.

6      Mr. Brown-Austin, do you understand that you are now

7  under oath, and if you answer any of my questions falsely,

8  your answers may later be used against you in another

9  prosecution for perjury or making a false statement?

10          THE DEFENDANT:  Yes, ma'am.

11          THE COURT:  All right.  Thank you.

12      What is your full name, sir?

13          THE DEFENDANT:  Larrien Assante [sic]

14  Brown-Austin.

15          THE COURT:  And how old are you?

16          THE DEFENDANT:  Today's the 7th or the 6th?

17          THE COURT:  Today is January 6, 2022.

18          THE DEFENDANT:  Then I'm still 36.

19          THE COURT:  All right.  And how far did you go

20  in school?

21          THE DEFENDANT:  I went to college.

22          THE COURT:  Are you able, then, to read and

23  write the English language?

24          THE DEFENDANT:  Yes, ma'am.

25          THE COURT:  Are you a citizen of the United

1    States?

2                        THE DEFENDANT:  Yes, ma'am.

3                        THE COURT:  Are you presently under the care

4    of any mental health provider?

5                        THE DEFENDANT:  I am.

6                        THE COURT:  And what are you being treated

7    for?

8                        THE DEFENDANT:  For posttraumatic stress

9    syndrome.

10                       THE COURT:  Okay.  Posttraumatic stress

11   disorder or syndrome?

12                       THE DEFENDANT:  Yes, ma'am, disorder.  PTSD.

13                       THE COURT:  Okay, PTSD.

14        And are you on any medication to treat that condition?

15                       THE DEFENDANT:  Yes, ma'am, I am.

16                       THE COURT:  What medication are you taking?

17                       THE DEFENDANT:  It's a -- they just switched

18   the medication, ma'am, and I can't recall exactly the long

19   name of the medication.

20                       THE COURT:  All right.

21                       THE DEFENDANT:  They just switched it like --

22   I can't recall the name of it, but it is for PTSD.

23        And there's also -- I have a seizure disorder as well

24   as -- I have a seizure disorder as well, but for mental

25   health it's for PTSD, and I've been labeled schizoaffective.

1          THE COURT:  All right.  Now, you indicated

2    that you're on a medication for the PTSD, the name of which

3    you can't remember right now.  You've also indicated that

4    you have a seizure disorder.  Are you on any medication for

5    that seizure disorder?

6          THE DEFENDANT:  Yes, ma'am, 1,000 milligrams

7    of Depakote.

8          THE COURT:  All right.  Now, are these

9    conditions, either the PTSD or seizure disorder, or the

10   medications you're taking for those conditions, having any

11   impact on your ability to understand what is happening

12   today?

13         THE DEFENDANT:  No, ma'am.

14         THE COURT:  Are the medications that you are

15   taking for those conditions impairing your ability to make a

16   decision as to whether it is in your best interest to enter

17   into a change of plea?

18         THE DEFENDANT:  No, ma'am.

19         THE COURT:  And Mr. DeVan, do you believe that

20   your client is competent?

21         MR. DeVAN:  Yes.

22         THE COURT:  Thank you.

23      Mr. Brown-Austin, have you been treated recently for

24   any addiction to narcotic drugs of any kind?

25         THE DEFENDANT:  Not recently.  Not for two

1    years.

2              THE COURT:  Two years ago?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  All right.  Are you presently

5    under the influence of any alcohol or narcotic drug?

6              THE DEFENDANT:  No, ma'am.

7              THE COURT:  Mr. Brown-Austin, have you

8    received a copy of the indictment pending against you in

9    this case, that is, the original charge made against you in

10   this case?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  And, sir, have you fully discussed

13   with your counsel, Mr. DeVan, the charge to which you are

14   expected to plead guilty, specifically, conspiracy to commit

15   sex trafficking by force, threats of force, fraud, or

16   coercion, in violation of Title 18 United States Code

17   Section 1594(c)?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Have you fully discussed with your

20   counsel, Mr. DeVan, the case in general?

21             THE DEFENDANT:  Yes, ma'am.

22             THE COURT:  And are you fully satisfied with

23   the counsel, representation, and advice given to you in this

24   case by your lawyer, Mr. DeVan?

25             THE DEFENDANT:  I'm satisfied with Mr. DeVan.

1    There was only one quirk where I sent you a letter, and -- I

2    sent you a letter, Miss Pamela Baker -- Barker, I apologize,

3    and the letter was -- I don't know if you recall getting the

4    letter.  It wasn't about my defense because he's excellent,

5    and I am satisfied with him.  It was just on the *United*

6    *States vs. Henning* [ph], if there was a case -- where I was

7    asking for the case be dismissed based off of the speedy

8    trial rights.  But my lawyer, he felt that it would be a

9    frivolous motion.  And that would be the only concern I had.

10   But besides that, my attorney is excellent, five star.

11              THE COURT:  All right.  So you are satisfied

12   with the counsel, representation, and advice that's been

13   given to you in this matter by Mr. DeVan, correct?

14              THE DEFENDANT:  Because I'm not a lawyer, of

15   course, I don't know how -- yes, I'm satisfied.

16              THE COURT:  All right.  Mr. Brown-Austin, you

17   do have certain basic Constitutional rights that I am about

18   to explain to you.  These are the rights that you are giving

19   up by pleading guilty.

20        Do you understand that you have a right to a trial by

21   jury?

22              THE DEFENDANT:  Yes.

23              THE COURT:  Do you give up that right?

24              THE DEFENDANT:  Yes.

25              THE COURT:  Do you understand that you have a

1   right to have your case tried to this Court with the consent

2   of the Government and the approval of the Court?

3                  THE DEFENDANT:  Yes.

4                  THE COURT:  Do you give up that right?

5                  THE DEFENDANT:  Yes.

6                  THE COURT:  Do you understand that at trial,

7   you would have the right to see, hear, confront, and

8   cross-examine all of the Government's witnesses?

9                  THE DEFENDANT:  Yes.

10                  THE COURT:  Do you give up that right?

11                  THE DEFENDANT:  Yes.

12                  THE COURT:  Do you understand that at trial,

13   you would have the right to compulsory process, which is the

14   right to compel or subpoena witnesses to testify in your

15   defense and/or require witnesses to produce documents that

16   might help your case?

17                  THE DEFENDANT:  Yes, ma'am.

18                  THE COURT:  Do you give up that right?

19                  THE DEFENDANT:  Yes.

20                  THE COURT:  Do you understand that at trial,

21   you would have the right to testify in your own defense?

22                  THE DEFENDANT:  Yes.

23                  THE COURT:  Do you give up that right?

24                  THE DEFENDANT:  Yes, ma'am.

25                  THE COURT:  Do you understand that at trial,

1  you would have the right to not testify and that no one

2  would be allowed to comment on the fact that you did not

3  testify?

4                    THE DEFENDANT:  Yes, ma'am.

5                    THE COURT:  Do you give up that right?

6                    THE DEFENDANT:  Yes, ma'am.

7                    THE COURT:  Do you understand that at trial,

8  you would be presumed innocent, that you would not have to

9  put on evidence or prove anything, and that you would have

10  the right to require the Government to prove your guilt

11  beyond a reasonable doubt?

12                    THE DEFENDANT:  Yes, ma'am.

13                    THE COURT:  Do you give up that right?

14                    THE DEFENDANT:  Yes.

15                    THE COURT:  Do you understand that you have

16  the right to an attorney at trial and throughout all

17  proceedings, either retained or appointed if you cannot

18  afford one?

19                    THE DEFENDANT:  Yes.

20                    THE COURT:  And do you understand,

21  Mr. Brown-Austin, that if you plead guilty, it is a complete

22  admission of guilt, and if I accept your plea, I will find

23  you guilty without a trial?

24                    THE DEFENDANT:  Yes, ma'am.

25                    THE COURT:  All right.  Mr. Brown-Austin, I do

1   have before me a written plea agreement, consisting of a

2   total of 13 pages, with the last or 13th page constituting

3   the signature page.

4       Now, Mr. DeVan, were all formal plea offers by the

5   Government conveyed to your client, Mr. Brown-Austin?

6           MR. DeVAN:  I'm sorry, Judge, the transmission

7   broke up.

8       What did you ask?  I apologize.

9           THE COURT:  No problem.

10      Were all formal plea offers by the Government conveyed

11  to your client by you?

12          MR. DeVAN:  Yes, yes.

13          THE COURT:  All right.  Thank you.

14      Now, Mr. Brown-Austin, I am looking at the last page

15  of the plea agreement.  Again, that's the signature page, 13

16  of 13.

17      Did you sign and place the date of 12/30/2021 on the

18  last page of this written plea agreement?

19          THE DEFENDANT:  Yes, ma'am, I did.

20          THE COURT:  And did you sign it after reading

21  it and discussing it completely with your lawyer, Mr. DeVan?

22          THE DEFENDANT:  Yes, ma'am, I did.

23          THE COURT:  And did you place your initials on

24  the bottom of each of the 13 pages, signifying that you read

25  each page and discussed it with your lawyer and understood

1    the information contained on each page?

2                    THE DEFENDANT:  Yes, ma'am.

3                    THE COURT:  And Mr. Brown-Austin, do you

4    understand all of the terms of the written plea agreement?

5                    THE DEFENDANT:  Yes, ma'am.

6                    THE COURT:  And do you believe that the

7    written plea agreement represents in its entirety the

8    agreement that you have with the Government?

9                    THE DEFENDANT:  Yes, ma'am.

10                   THE COURT:  Did anyone make any promise or

11   assurance that is not in the plea agreement to persuade you

12   to accept this agreement?

13                   THE DEFENDANT:  No, ma'am.

14                   THE COURT:  And did anyone threaten you in any

15   way to persuade you to accept this agreement?

16        Could you please speak up just to make sure I can hear

17   you, Mr. Brown-Austin?

18                   THE DEFENDANT:  I apologize, Your Honor.

19        No, ma'am.

20                   THE COURT:  All right.  Thank you.

21        Based upon your testimony thus far, I am not going to

22   read this plea agreement verbatim or word for word, but I am

23   going to ask you about some terms or provisions contained in

24   the agreement.

25        Do you understand that the terms or provisions that I

1  do not ask you about are still very important and are part

2  of the agreement?

3            THE DEFENDANT:  Yes, ma'am.

4            THE COURT:  All right.  First, I would like to

5  advise you, Mr. Brown-Austin, of the statutory maximum

6  penalties associated with the offense to which you are

7  expected to plead guilty.  Those are as follows:

8       The maximum term of imprisonment by statute is life;

9  the maximum statutory fine is $250,000; and the maximum

10  period of supervised release is your lifetime.

11      Do you understand, sir, the statutory maximum

12  penalties associated with the offense to which you are

13  expected to plead guilty?

14            THE DEFENDANT:  Yes, ma'am.

15            THE COURT:  Also, I would like to advise you

16  of the minimum penalties associated with the offense to

17  which you are expected to plead guilty.

18      The minimum term of imprisonment is any term of years;

19  the minimum period of supervised release is five years.

20      Do you understand that, sir?

21            THE DEFENDANT:  Yes, ma'am.

22            THE COURT:  And, sir, do you understand that

23  the sentence for the offense to which you're expected to

24  plead guilty may not be satisfied by a term of probation and

25  must include some form -- or some period, I should say, of

1    imprisonment?

2                    THE DEFENDANT:  Yes, ma'am.

3                    THE COURT:  And do you also understand, as

4    we'll discuss more fully below with reference to paragraph

5    14, that you and the Government are agreeing under this

6    agreement that you must be sentenced to a term of 180 months

7    of imprisonment?

8                    THE DEFENDANT:  Yes.  Yes, ma'am.

9                    THE COURT:  And do you understand that if you

10   plead guilty to the offense to which you are expected to

11   plead guilty, that you will be required to pay a mandatory

12   special assessment of $100?

13                   THE DEFENDANT:  Yes, ma'am.

14                   THE COURT:  Do you understand that if you

15   plead guilty, I may order you to pay the cost of prosecution

16   and sentence, including but not limited to imprisonment,

17   community confinement, home detention, probation, and/or

18   supervised release?

19                   THE DEFENDANT:  Yes, ma'am.

20                   THE COURT:  And, sir, do you understand that

21   the Court may order you to pay restitution as a condition of

22   the sentence, probation, and/or supervised release?

23                   THE DEFENDANT:  Yes.  Yes, ma'am.

24                   THE COURT:  And, sir, do you understand that

25   specifically, pursuant to paragraph 24 of the written plea

1    agreement, that you are agreeing to make full restitution as

2    ordered by this Court pursuant to Title 18 United States

3    Code Sections 3336(a) and 1593, on a joint and several

4    basis, payable immediately on such terms and conditions as

5    this Court may impose, for the losses caused by your

6    relevant conduct in this case as defined under guidelines

7    section 1B1.3?

8              THE DEFENDANT:  I will.  Yes, ma'am, I will.

9              THE COURT:  And do you also understand that

10   pursuant to the plea agreement, you are agreeing not to seek

11   the discharge of any restitution obligation, in whole or in

12   part, in any present or future bankruptcy proceedings?

13             THE DEFENDANT:  Yes, ma'am.

14             THE COURT:  And Mr. Brown-Austin, do you

15   understand that if you violate any term or condition of

16   supervised release, such violation could result in a period

17   of incarceration or other additional penalty as imposed by

18   the Court?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  And do you understand that in some

21   circumstances, the combined term of imprisonment under the

22   initial sentence and additional period of incarceration for

23   any such violation could exceed the statutory maximum term?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Do you understand that you may

1    also be required to forfeit any property used to commit this

2    offense or any property that represents the proceeds of this

3    offense?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Do you understand that sentencing

6    does rest within the discretion of the Court, that federal

7    sentencing law requires the Court to impose a sentence which

8    is sufficient but not greater than necessary to comply with

9    the purposes of Title 18 United States Code Section 3553(a),

10   and that in so doing, the Court must consider or take into

11   account a number of factors?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  And do you understand that those

14   factors are the statutory penalty, the seriousness of the

15   offense, your personal history and characteristics,

16   deterrence, protection of the public, rehabilitation,

17   disparity in sentences, and the advisory United States

18   Sentencing Guidelines in effect at the time of sentencing,

19   and that in determining the sentence, the Court could depart

20   or vary from the advisory guideline range?

21             THE DEFENDANT:  Yes.  Yes, ma'am.

22             THE COURT:  And have you and your lawyer,

23   Mr. DeVan, talked about how the advisory sentencing

24   guidelines might apply to your case?

25             THE DEFENDANT:  I believe so, yes, ma'am.

1          THE COURT:  And do you understand that parole

2     has been abolished and that when upon conviction you are

3     sentenced to prison, you will not be released on parole?

4               THE DEFENDANT:  Yes, ma'am.

5               THE COURT:  At this time, Mr. Brown-Austin, I

6     would like to advise you of the essential elements of the

7     offense to which you're expected to plead guilty or what the

8     Government would be required to prove beyond a reasonable

9     doubt --

10         Ms. Skutnik?

11              MS. SKUTNIK:  I'm sorry, Judge.  I was waiting

12     for you to finish your sentence.

13         Your Honor, before we go too far past this in terms of

14     potential consequences, could the Court also address with

15     Mr. Brown in paragraph 4 the JVTA special assessment that he

16     may be subject to?

17              THE COURT:  I will be getting to that.

18              MS. SKUTNIK:  I'm so sorry, Judge.  I thought

19     we had moved on from potential consequences.  Of course you

20     will cover it.

21              THE COURT:  No, I was just taking things from

22     the plea agreement as they arose in the context of what I

23     was advising him, but I will certainly address everything

24     that I believe is pertinent in the plea agreement in terms

25     of consequences.

1          MS. SKUTNIK:  Please forgive me for my
2    interruption, Judge.

3          THE COURT:  That's all right.

4       Again, Mr. Brown-Austin, I'm going to advise you of
5    the essential elements of the offense or what the Government
6    would be required to prove at trial by evidence beyond a
7    reasonable doubt.

8       Now, the elements the offense of conspiracy to commit
9    sex trafficking by force, threats of force, fraud, or
10   coercion, in violation of Title 18 United States Code
11   Sections 1594(c) and 1591(a)(1), are that you knowingly and
12   intentionally did combine, conspire, confederate, and agree
13   with another to recruit, entice, harbor, transport, provide,
14   obtain, advertise, maintain, patronize, or solicit by any
15   means a person in or affecting interstate or foreign
16   commerce, knowing or in reckless disregard of the fact that
17   means of force, threats of force, fraud, coercion, or any
18   combination of such means would be used to cause the person
19   to engage in a commercial sex act.

20      Mr. Brown-Austin, do you understand the essential
21   elements of the offense to which you're expected to plead
22   guilty or what the Government would have to prove beyond a
23   reasonable doubt if the case proceeded to trial?

24          THE DEFENDANT:  I understand, yes, ma'am.

25          THE COURT:  All right.  And AUSA Skutnik,

1    would you please place on the record the defendant's conduct

2    and a factual basis for the guilty plea.

3              MS. SKUTNIK:  Yes, Your Honor.

4         Your Honor, the following facts set forth are true and

5    can be established beyond a reasonable doubt if the case

6    were to proceed to trial, and they are as follows:

7         In or about June of 2018, and continuing through on or

8    about August 20 of 2018, in the Northern District of Ohio

9    Eastern Division, the defendants Larrien Brown-Austin, a/k/a

10   Chico, Larry Brown-Austin, and Shannon Marzano, and others,

11   did knowingly and intentionally combine, conspire,

12   confederate, and agree with each other and with others to

13   commit offenses against the United States as set forth in 18

14   United States Code Section 1591(a)(1) and (b)(1).

15        Further, in 2018, Larry Brown-Austin owned a

16   single-family house located at 2032 24th Street Northeast in

17   Canton, Ohio, hereafter referred to as "the residence."  And

18   this allowed his son, Larrien Brown-Austin, a/k/a Chico, to

19   live there.

20        Larry Brown-Austin frequented the residence and at

21   times stayed in his bedroom on the first floor.  Larry

22   Brown-Austin also brought groceries and supplies to the

23   residence during the time frame in the indictment and

24   supplied Larrien Brown-Austin with heroin.

25        Marzano and several drug-addicted men and women also

1    frequented the residence and occasionally lived at the

2    residence in the summer of 2018.

3         Larrien Brown-Austin ran the residence and was known

4    to the people that frequented the residence as Chico.

5         In June of 2018, Marzano met SD after SD became

6    homeless.  Marzano arranged with Larrien Brown-Austin for

7    SD, a heroin addict, to live at the residence and engage in

8    sexual acts with customers for money.  On the day SD moved

9    into the residence, Marzano caused an ad for SD to be posted

10   on Skip the Games, a known prostitution website.

11        Almost immediately, Larrien Brown-Austin demanded a

12   cut of the proceeds received from SD's commercial sex

13   appointments.  Thereafter, Larrien Brown-Austin supplied SD

14   with heroin and then demanded all the money made by SD from

15   her commercial sex dates.

16        Skip the Games is a website that is hosted outside the

17   United States and offers Internet connections for dating.

18   It is widely used as a means to advertise for commercial

19   sex.

20        Shortly after moving into the residence, SD met ML,

21   who was homeless, and invited her to come to the residence.

22        Larrien Brown-Austin agreed to let ML stay at the

23   residence and gave her methamphetamine and heroin.

24   Thereafter, Larrien Brown-Austin informed ML that she owed

25   him money for living at the residence and for drugs and that

1    she had to perform commercial sex acts to pay him.

2           Thereafter, SD and ML were not allowed to leave the

3    residence.

4           Beginning in approximately mid June of 2018, and

5    continuing through on or about August 20, 2018, Larrien

6    Brown-Austin and Marzano caused several ads to be posted on

7    Skip the Games, a known prostitution site, for SD and ML.

8    These ads resulted in numerous commercial sex appointments

9    with SD and ML at the residence, as well as some outcalls.

10          In addition, Marzano and Larrien Brown-Austin

11   purchased methamphetamine with money derived from commercial

12   sex acts and distributed it to SD, ML, and others at the

13   residence.

14          Larrien Brown-Austin, Marzano, and others used

15   multiple cell phones with Internet capability, including an

16   LG-GSM smartphone, to communicate with commercial sex act

17   customers.  They would use text messaging, e-mail, and

18   various mobile phone applications that utilized the Internet

19   to communicate with prospective customers on behalf of SD

20   and ML.

21          Marzano and Larrien Brown-Austin also used a tracking

22   application on their cell phones known as Life360 to keep

23   track of the whereabouts of SD and others when they left the

24   residence to engage in commercial sex acts.

25          From June 2018 through August 20, 2018, Larrien

1    Brown-Austin kept a firearm hidden in the residence and used

2    the firearm to threaten SD and others.  In addition, Larrien

3    Brown-Austin physically assaulted SD when she tried to run

4    away from the residence.  He also threatened to assault SD

5    if she did not want to go on a date, did not provide the

6    money from the customer before the commercial sex act began,

7    or if he thought SD withheld money from an appointment.

8         Larrien Brown-Austin was violent and threatened others

9    in the residence in the presence of Marzano, SD, and ML.  He

10   once beat another woman in the presence of Marzano and SD

11   until the woman's head was swollen so bad she looked like a,

12   quote, Conehead.

13        SD was addicted to heroin and would get violently ill

14   if she went into withdrawal.  Larrien Brown-Austin knew this

15   and would control SD by providing or withholding heroin and

16   other illegal narcotics to make sure she performed multiple

17   commercial sex appointments every day.

18        Further, Larrien Brown-Austin required SD and ML to

19   participate in group sex acts with him that were recorded

20   using cellular devices.

21        Thank you, Your Honor.

22             THE COURT:  Thank you.

23        And Mr. Brown-Austin, do you agree that the facts

24   constituting the crime charged that AUSA Skutnik just placed

25   on the record are true and could be established beyond a

1    reasonable doubt if the case proceeded to trial?

2                      THE DEFENDANT:  Yes.  Yes, ma'am.

3                      THE COURT:  And Mr. Brown-Austin, do you

4    understand that I may accept the plea agreement, reject it,

5    or defer a decision until I have reviewed the presentence

6    report?

7                      THE DEFENDANT:  I understand, yes, ma'am.

8                      THE COURT:  And do you understand that if I

9    choose not to follow the terms of the plea agreement, I will

10   give you the opportunity to withdraw your plea of guilty,

11   and that if you choose not to withdraw your plea, I may

12   impose a more severe sentence without being bound by the

13   plea agreement or the specific terms rejected by the Court?

14                     THE DEFENDANT:  Yes, ma'am.

15                     THE COURT:  And do you understand that the

16   agreed disposition will be included in the judgment?

17                     THE DEFENDANT:  Yes, ma'am.

18                     THE COURT:  Now, I want to go over additional

19   provisions of the plea agreement, specifically as it relates

20   to, as Ms. Skutnik pointed out, your -- the fact that you

21   are subject to an additional assessment under the Justice

22   For Victims of Trafficking Act, Title 18 United States Code

23   Section 3014, in the amount of $5,000 unless the Court

24   determines that you are indigent.

25        Do you understand that?

1          THE DEFENDANT:  Yes, ma'am.

2          THE COURT:  Also, pursuant to the plea

3   agreement, Counts 2 and 3 of the indictment against you will

4   be dismissed at the time of sentencing.

5      Do you understand that?

6          THE DEFENDANT:  Yes, ma'am.

7          THE COURT:  And you understand that the plea

8   agreement also indicates that the United States Attorney's

9   Office will not bring any other criminal charges against you

10  for violations known to the United States Attorney's Office

11  on the date of the execution of the plea agreement,

12  including potential charges for possessing contraband while

13  incarcerated at NEOCC?

14          THE DEFENDANT:  Yes, ma'am.

15          THE COURT:  And do you understand that

16  pursuant to paragraph 14 -- or according to paragraph 14 and

17  pursuant to Rule 11(c)(1)(C), and after considering the

18  factors in Title 18 United States Code Section 3553(a), you

19  and the Government agree that the appropriate disposition of

20  this case is for you to receive a sentence that includes a

21  specific term of 180 months of imprisonment?

22          THE DEFENDANT:  Yes, ma'am.

23          THE COURT:  All right.  And do you understand,

24  sir, that pursuant to the plea agreement, you and the

25  Government are agreeing that using the current advisory

1  sentencing guidelines manual, the computations set forth in

2  paragraph 16 represent the correct applicable offense level?

3  And that is a base offense level of 34, a two-level increase

4  for a multiple-count adjustment for two victims, and another

5  increase for repeat and dangerous sex offender against

6  minors, for a total of 37 total offense level before

7  acceptance of responsibility?

8                    THE DEFENDANT:  Yes, ma'am.

9                    THE COURT:  And do you understand, too, that

10  pursuant to the plea agreement, you and the Government agree

11  that no other specific offense characteristics, guideline

12  adjustments, or guideline departures apply?

13                    THE DEFENDANT:  I apologize.  I didn't hear --

14  something broke up.  I apologize, ma'am.

15                    THE COURT:  All right.  I'll say it again.

16      Do you understand that pursuant to the written plea

17  agreement, you and the Government agree that no other

18  specific offense characteristics, guideline adjustments, or

19  guideline departures apply?

20                    THE DEFENDANT:  Yes.  Yes, ma'am.

21                    THE COURT:  And do you understand that

22  pursuant to the plea agreement, the United States Attorney's

23  Office is agreeing to recommend a three-level reduction for

24  acceptance of responsibility provided your conduct continues

25  to reflect your acceptance of responsibility?

1            THE DEFENDANT:  Yes, ma'am.

2            THE COURT:  And do you understand, though,

3    that it will be up to the Court at the time of sentencing to

4    determine whether a reduction for acceptance of

5    responsibility is appropriate?

6            THE DEFENDANT:  Yes, ma'am.

7            THE COURT:  And do you understand, sir, that

8    you and the Government have no agreement about the criminal

9    history category applicable in this case, and that the

10   criminal history category will be determined by the Court

11   after the completion of a presentence investigation by the

12   United States Probation Office?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  And do you also understand,

15   though, that pursuant to -- or under United States

16   Sentencing Guidelines Section 4B1.5(a)(2), your criminal

17   history category shall be the greater of the criminal

18   history category determined under Chapter 4 part A or

19   Criminal History Category V?

20           THE DEFENDANT:  Yes, ma'am.

21           THE COURT:  And do you also understand that

22   following your conviction for a violation of Title 18 United

23   States Code Section 1594(c), conspiracy to commit sex

24   trafficking by force, threats of force, fraud, or coercion,

25   in violation of 1591(a)(1), you will be required to register

1    as a sex offender pursuant to the Sex Offender Registration

2    and Notification Act, and that's 34 United States Code

3    20911(5), generally.

4         Do you understand that?

5                   THE DEFENDANT:  Yes, ma'am, I do.

6                   THE COURT:  All right.  And do you also

7    understand that you have rights in limited circumstances to

8    appeal the conviction or sentence in this case and to

9    challenge the conviction or sentence collaterally through a

10   postconviction proceeding?

11                  THE DEFENDANT:  Yes, ma'am.

12                  THE COURT:  Do you understand, though, that

13   pursuant to the plea agreement, you are voluntarily waiving

14   those rights except for the right to appeal --

15                  THE DEFENDANT:  Bless you.

16                  THE COURT:  I'm sorry?

17                  THE DEFENDANT:  I thought you sneezed.  I said

18   "bless you."  I'm sorry.

19                  THE COURT:  I'm sorry.  I coughed.  Thank you.

20        Let me start over again.

21        Do you understand that pursuant to the plea agreement,

22   you are voluntarily waiving those rights except for the

23   following:

24        The right to appeal any punishment in excess of the

25   statutory maximum or any prison sentence to the extent it

1    exceeds the maximum of the advisory sentencing guidelines

2    range found by the Court in accordance with the sentencing

3    stipulations and computations in the agreement using the

4    criminal history category found applicable by the Court?

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  And, sir, do you understand that

7    you are not barred from perfecting any legal remedies you

8    may otherwise have on appeal or collateral attack with

9    respect to claims of ineffective assistance of counsel or

10   prosecutorial misconduct?

11                   THE DEFENDANT:  Yes, ma'am.

12                   THE COURT:  And do you also understand that

13   pursuant to the plea agreement, you are waiving all defenses

14   based on the statute of limitations with respect to any

15   prosecution that is not already time barred by the

16   applicable statute of limitations on the date that you

17   signed the agreement and that is commenced within one year

18   after any of the following events:

19        You fail to plead guilty at this proceeding or the

20   Court refuses to accept a guilty plea by you pursuant to the

21   agreement; the Court permits you to withdraw a guilty plea

22   entered pursuant to this agreement or otherwise vacates such

23   a guilty plea, or; the conviction obtained pursuant to this

24   agreement is vacated, overturned, or otherwise set aside?

25                   THE DEFENDANT:  Yes.  Yes, ma'am.

1           THE COURT:  And do you understand that the

2    waiver of the statute of limitations is effective

3    immediately upon your signing of the agreement and is not

4    conditioned upon the approval of this agreement by the

5    Court?

6           THE DEFENDANT:  Yes, ma'am.

7           THE COURT:  All right.  Now, AUSA Skutnik, is

8    there anything else that you would like to add or have me

9    advise Mr. Brown-Austin?

10           MS. SKUTNIK:  No, Your Honor.  Thank you very

11   much.

12           THE COURT:  Thank you.

13       Mr. DeVan, is there anything else that you would like

14   to add or have me advise your client?

15           MR. DeVAN:  Nothing as to the plea, Your

16   Honor.

17           THE COURT:  Thank you.

18       And Mr. Brown-Austin, do you need any more time to

19   consult with your lawyer?

20           THE DEFENDANT:  Maybe two minutes.  I don't

21   want to take up a lot of time.  Just two minutes.

22           THE COURT:  All right.  We'll put you in the

23   breakout room again.

24       Kim?

25           (Attorney-client conference in breakout room.)

1          THE COURT:  All right.  Mr. Brown-Austin, did

2     you have sufficient time to confer with Mr. DeVan as you

3     requested?

4          THE DEFENDANT:  I apologize, yes, ma'am, for

5     the interruption.  Yes, ma'am.

6          THE COURT:  All right.  Thank you.

7     Now then, sir, how do you plead, then, to Count 1,

8     conspiracy to commit sex trafficking by force, threats of

9     force, fraud, or coercion, in violation of Title 18 United

10    States Code Section 1594(c)?  Guilty or not guilty?

11          THE DEFENDANT:  Guilty, Your Honor.

12          THE COURT:  All right.  It is the finding of

13    the Court in the case of the United States of America vs.

14    Larrien Brown-Austin that the defendant is fully competent

15    and capable of entering an informed plea, that the defendant

16    is aware of the nature of the charge and the consequences of

17    the plea, and that the plea of guilty is a knowing and

18    voluntary plea supported by an independent basis in fact

19    containing each of the essential elements of the offense.

20     The plea is therefore accepted, and the defendant is

21    now adjudged guilty of that offense.

22     Mr. Brown-Austin, a written presentence report will be

23    prepared by the Probation Office to assist me in sentencing.

24    You will be asked to give information for the report, and

25    your attorney will be present if you wish.  I will permit

1    both you and your counsel to read the presentence report and

2    file any objections to it before the sentencing hearing.

3         You and your counsel shall have an opportunity to

4    speak on your behalf at the sentencing hearing, and the

5    victims shall be afforded an opportunity to be heard at the

6    sentencing hearing as well.

7         The defendant is referred to the Probation Office for

8    a presentence investigation and report.

9         The sentencing is set for May 11, 2022, at 9:00 a.m.

10        The defendant is detained pending sentencing.

11        Anything further, AUSA Skutnik?

12             MS. SKUTNIK:  No.  Thank you, Your Honor.

13             THE COURT:  And Mr. DeVan, anything further?

14             MR. DeVAN:  Yes, Your Honor.  I do have one

15   request.

16        My client, as you know, has been in custody for nearly

17   two years during this pandemic, and of course many of us --

18   there's no way around the fact that this pandemic has held

19   up many of these proceedings.

20        Is it possible to expedite the presentence report in

21   order to get him sentenced sooner rather than later in this

22   matter?

23             THE COURT:  Actually, no.  We are told by the

24   Probation Office that they are overwhelmed, and it's a

25   minimum of about 16 weeks before we can get -- have a

1    presentence report.

2         Kim, any updates from the Probation Office that you

3    know about?  But that's my understanding.

4                   THE COURTROOM DEPUTY:  No, Your Honor, you're

5    correct.

6                   THE COURT:  All right.  Sorry, but we really

7    don't have any control over that in terms of what they tell

8    us the time they need to properly complete that presentence

9    report.

10        But I understand the issue and the concern, but

11   nonetheless, I have to deny that request.

12                  MR. DeVAN:  Thank you, Your Honor.

13                  THE COURT:  All right.  Thank you all.  Take

14   care.

15                  (Proceedings adjourned at 11:18 a.m.)

16                         * * * * *

17                    **C E R T I F I C A T E**

18

19        I certify that the foregoing is a correct transcript

20   of the record of proceedings in the above-entitled matter

21   prepared from my stenotype notes.

22

23        */s/ Lance A. Boardman*            *December 7, 2022*
     LANCE A. BOARDMAN, RDR, CRR              DATE
24

25